PAUL DOUGLAS v. W. C. MALLISON AND SON, A PARTNERSHIP CONSISTING OF S. M. MALLISON, JR., FRED M. MALLISON, MRS. S. M. MALLISON, SR., AND MARY MALLISON BAKER.

(Filed 29 September, 1965.)

**1. Appeal and Error § 23—**

An assignment of error to the exclusion of testimony should set forth the question asked, the objection, the ruling on the objection, and what the witness would have answered, so as to disclose the questions sought to be presented for review within the assignment of error itself.

**2. Appeal and Error § 21a—**

An assignment of error to judgment of nonsuit is sufficient if it merely states that it is to such judgment and refers to the page of the record where the supporting exception is noted.

DOUGLAS *v.* MALLISON.

**3. Appeal and Error § 41—**

Where plaintiff's witness is permitted to state clearly plaintiff's view of the fact in question, an exception to the exclusion of statement of plaintiff's counsel as to what the answer alleged in this regard cannot be prejudicial.

**4. Same—**

Where the record does not show what the answer of the witness would have been had the witness been permitted to testify, it cannot be ascertained that the exclusion of the testimony was prejudicial.

**5. Same—**

The exclusion of testimony offered for the purpose of showing that the witness made a representation amounting to a warranty cannot be prejudicial when the buyer shows no authorization on the part of the witness to bind the seller.

**6. Sales § 6—**

There can be no implied warranty of the quality or fitness of a second-hand machine for the intended use when the purchaser testifies that he, himself, had formerly used the machine and his evidence discloses that he thoroughly inspected it at the time of sale.

**7. Sales § 5—**

Any affirmation of fact or promise by the seller relating to the article sold is an express warranty if the natural tendency of the statement is to induce the buyer to purchase the article, and the buyer does purchase it in reliance upon the statement.

**8. Sales § 14g—**

Independent of negligence, the purchaser may recover for a personal injury which results from a breach of warranty if such injury might have been foreseen as a natural consequence of such breach.

**9. Sales § 14b—**

The buyer is not entitled to recover for personal injuries resulting from breach of warranty unless he carries the burden of proving the warranty, its breach, and his injury which could have been foreseen by the parties as a natural consequence of the breach.

**10. Negligence § 26—**

Nonsuit on the ground of contributory negligence alleged in the answer is properly entered when plaintiff's own evidence, considered in the light most favorable to plaintiff, so clearly establishes this defense that no other reasonable inference can be drawn therefrom.

**11. Negligence § 20—**

Contributory negligence must be pleaded.

**12. Same—**

In this action to recover for injuries resulting when the "A-frame" of the machine plaintiff had purchased from defendants fell back on plaintiff while he was operating the machine, allegations in the answer to the effect that plaintiff knew that the "A-frame" of the machine folded back toward

the chassis for the purpose of transportation, and that in preparing the machine for use plaintiff failed to take precautions to prevent the frame from folding back toward him, *held* sufficient to allege contributory negligence of plaintiff in failing to take the necessary precautions.

**13. Sales § 16—    Evidence held to show contributory negligence as a matter of law in using machine with obvious defect.**

Plaintiff's evidence, considered in the light most favorable to him, tended to show that he and his employees had used the machine in question previously when it had a chain on each side of the "A-frame", that they took the machine to the woods for use with the "A-frame" folded back on the chassis, that they raised the frame and fastened the chain on the left side, that he and his employees understood the purpose of the chain was to brace the "A-frame" so as to prevent it from falling back when the machine was used, that the right side of the "A-frame" had a broken remnant of the steel arm similar to that to which the chain on the left side was attached, and that in using the machine the "A-frame" fell back on the chassis where plaintiff was sitting, resulting in the injury in suit. *Held:* Plaintiff's own evidence discloses contributory negligence as a matter of law.

**14. Pleadings § 20—**

A pleading will be liberally construed with a view to substantial justice between the parties.

APPEAL by plaintiff from *Fountain, J.,* February 15, 1965 Civil Session of BEAUFORT.

This is an action to recover damages for personal injuries sustained by the plaintiff when a portion of a pulpwood loading machine, purchased by him from the defendants, collapsed and fell upon him. From a judgment of involuntary nonsuit entered at the close of his evidence, the plaintiff appeals. He also assigns as error the exclusion of proposed testimony.

Summarizing the complaint, it alleges: The plaintiff purchased from the defendants a pulpwood loading machine for use in the woods in moving pulpwood from a loading deck onto a pallet for subsequent loading onto a truck, which purpose he explained to the defendants. They advised him that the machine was in good condition and was suitable and fit for such purpose. Relying upon these statements, he purchased the machine, set it up in the woods and undertook to use it for such purpose. On the first attempt to use it, a portion of the machine, referred to as the "A-frame," suddenly collapsed and fell upon the plaintiff, inflicting severe and permanent injuries. The collapse of the A-frame was due solely to its defective condition in that it was not properly braced and was, therefore, unable to resist the strain placed upon it by the loading of pulpwood in the contemplated operation. This defect was, or should have been, known to the defendants in the exercise of ordinary care in the inspection of the machine. The representation

made by the defendants to the plaintiff as to its suitability for the intended use was negligently and wantonly made, which negligence was the sole cause of the injuries sustained by the plaintiff. Plaintiff is not a mechanic and had no way of knowing of the defect in the machine.

The defendants, in their answer, admit they sold the machine to the plaintiff but deny the remaining allegations of the complaint, and further allege in summary: The machine was of simple design and construction, all parts of it being open and visible. It was originally constructed by them for use in limited pulpwood operations and the plaintiff knew, or by the exercise of due care and observation should have known, the mechanics involved in the operation of the loader and its limitations, there being no hidden dangers or latent defects in it. The plaintiff was guilty of contributory negligence, which was one of the proximate causes of his injury, in that, knowing the A-frame was designed to fold back toward the chassis of the machine, for convenience in moving the machine from place to place, and also knowing that, when the machine was in use, the A-frame should be in a position slightly forward of vertical, he nevertheless used the loader in a manner which caused the A-frame to be pulled backward and negligently failed to see and observe what he should have seen concerning the requirements of the safe operation of the loader and the mechanics involved in its use.

The evidence, interpreted most favorably to the plaintiff, tends to show:

Plaintiff is a high school graduate but is not a trained mechanic and has no particular mechanical ability. Before purchasing the loader he had been employed in the pulpwood operations of a Mr. Woolard, who then owned the identical machine. During his employment by Mr. Woolard, the plaintiff observed the use and operation of this machine and operated it occasionally himself.

The machine consists of a chassis mounted on automobile wheels. The A-frame rises above the chassis at the front thereof and consists of two steel beams with a cross bar so that it is in the shape of a capital A. A swinging boom is mounted at the top of the A-frame. A cable runs from a drum or winch on the chassis at the foot of the A-frame, up the A-frame and then, through pulleys, out over the boom and down to the ground, a "grab hook" being attached to the ground end of the cable for the lifting of pulpwood logs. When this hook is attached to a log, the cable is wound on the winch with power supplied by a farm tractor, which is independent of the machine itself, and thus the log of pulpwood is dragged or lifted. The operator of the machine sits on a seat upon the chassis and applies the power to the winch by use of a lever.

The A-frame was not designed to move from side to side, but the boom at the top of the A-frame was designed to swing from side to side through a total angle of 180 degrees in front of the A-frame. The swinging boom enabled the operating crew to attach the cable to logs straight in front or to either side of the machine and, through the application of power by winding the cable on the winch, to pull the log toward the machine and lift it.

A chain, running from the top of the A-frame to a point on the chassis behind the operator's seat, was designed to keep the A-frame from falling forward out of its working position, which was slightly forward of vertical. To facilitate the transportation of the machine from place to place, the A-frame was designed so that it could be folded back upon the chassis. To prevent the A-frame from so folding backward, when the machine was in operation and power was applied through the cable for the lifting or pulling of logs, there were, originally and while this machine was operated by the plaintiff as an employee of Mr. Woolard, two chains, one attached to the outside of each side beam of the A-frame and running thence to a steel arm projecting forward from the corresponding side of the chassis. To permit the A-frame to be lowered backward when desired for the movement of the machine from place to place, these chains were capable of being disconnected from the A-frame, being fastened to it by bolts at other times.

During the period when the machine was owned by Mr. Woolard and operated, as his employee, by the plaintiff there was no accident in connection with the use of the machine and the plaintiff observed it only casually. It was then used to pick up logs off to one side as well as in front of the machine.

Having decided to go into the pulpwood operation for himself, the plaintiff went to the defendants' place of business to purchase a pulpwood loader. He found on their yard the machine in question and, believing it to be the machine which he had formerly observed and used in the Woolard operation, he asked the defendants' agent if they had the Woolard loader. Finding that the machine on the yard was, indeed, the same machine which he had used in the Woolard operation, he negotiated for its purchase and bought it.

The plaintiff could then tell from looking at the machine that it needed work done on it and certain parts were missing. He testified: "I did not ask him [the salesman] if the machine was in operating condition for it did not appear to be in operating condition. I looked at it and reached the conclusion that it needed work done to it." He then testified that he and the defendants' salesman discussed the machine and what needed to be done to it. The salesman stated that the defendants would get it "in working order." He instructed the plaintiff to

get a cable and clamps with which to fasten it to the winch and pulleys over which the cable would operate. These things the plaintiff was to install on the machine himself, which he did after accepting delivery of the machine from the defendants. The salesman stated, at the time the plaintiff purchased the machine, "I will get it ready for you to go." The plaintiff then left to get the cable, clamps and pulleys, which he was to install. Approximately an hour and a half later he returned for the machine and took delivery of it at the defendants' shop after a conversation with one of the mechanics employed there.

Thereupon, the plaintiff moved the machine to the site of his pulpwood operations and set it up on Saturday, attaching the cable and pulleys supplied by himself. In setting up the machine, the plaintiff and his employees raised the A-frame themselves. He did not notice what, if anything, was done to secure the A-frame in its working position.

The following Monday morning, the plaintiff and his employees returned to the site and the plaintiff took his seat on the machine to operate it for the first time. His employees attached the cable hook to a piece of pulpwood lying off to the right side of the machine at an angle of about 90 degrees. At the appropriate signal, the plaintiff, by use of the lever, applied the power for the purpose of raising the log, which weighed approximately 125 pounds. Immediately upon application of the power, the A-frame fell backward and struck the plaintiff, breaking his back and causing him to be paralyzed from the waist down.

Examination of the machine, after the accident, disclosed that the chain running from the left side of the A-frame was still attached to the steel arm projecting from the left side of the chassis but the steel arm was bent around to the inside; that is, to the right. As the A-frame fell, it pulled this arm around. There was no chain on the right side of the A-frame and the steel arm, which originally projected from the right side of the chassis and to which the chain on the right side was originally to be attached, was broken off, leaving a stub. This was an old break, as disclosed by its rusty condition. Thus, at the time the machine was set up by the plaintiff and his employees, there was no steel arm and no chain on the right side of the A-frame. The absence of the chain and steel arm on the right side would have been clearly observable to anyone who looked at that side of the A-frame prior to the accident.

*John A. Wilkinson and LeRoy Scott for plaintiff.*

*James & Speight; William C. Brewer, Jr., W. W. Speight and Hallett S. Ward for defendants.*

Lake, J. The appellant's first three assignments of error do not comply with this Court's Rule 19(3) in that they are not sufficient, within themselves, to present the errors relied upon. For example, Assignment #1 simply states:

"1. The ruling of his Honor on that portion of the direct examination of Paul Douglas, an objection to which was sustained. (R. p. 18). This is Plaintiff Appellant's Exception #1."

The rule requires that the assignment of error show what question is intended to be presented for consideration without the necessity of paging through the record to find the asserted error. A mere reference in the assignment of error to the record page where the asserted error may be discovered is not sufficient. *Hunt v. Davis,* 248 N.C. 69, 102 S.E. 2d 405. The assignment of error should have set forth, within itself, the question asked, the objection, the ruling on the objection, and what the witness would have answered if he had been permitted to testify.

Had these three been the only assignments of error, the appeal might properly have been dismissed on this ground alone, but since the appeal is from a judgment of nonsuit, which is Assignment #4, it is not subject to dismissal under this rule.

Having gone upon the voyage of discovery, to which we are directed by the references to the record in the first three assignments of error, we find that they are without merit. Assignment #1 relates to no question propounded to the witness, but to plaintiff's counsel's statement as to what the answer alleges. The witness stated clearly the plaintiff's view of the fact in question, so, in any event, the plaintiff was not prejudiced by the sustaining of this objection. As to Assignment #3, the record shows only the question to which objection was sustained. It does not show what the witness would have said if he had been permitted to answer. Thus, again, there is no showing of prejudice to the plaintiff by this ruling.

Assignment #2 relates to the sustaining of an objection to a conversation between the plaintiff and one, Henry Hamilton, identified only as a mechanic employed by the defendants. Had the plaintiff been permitted to answer, he would have testified that Hamilton told him, when he went back to get the machine from the defendants' shop, "It was ready." Even if the statement by an authorized agent of the seller of a machine that it is "ready" could be deemed a warranty or representation of fitness for a particular use and purpose, there is nothing in the record to indicate that Hamilton was authorized by the defendants to make any statement as to the condition of this machine or that he knew what use of it was contemplated, or that he had done any work on it. There was no error in sustaining this objection.

The appellant must, therefore, stand or fall on his contention that it was error to allow the defendants' motion for judgment as of nonsuit in view of the evidence offered by him and admitted.

The complaint, liberally construed, proceeds upon two theories of recovery: (1) That the defendants, at the time of the sale, warranted that this particular loader was in good condition and could be operated with safety; and (2) that the defendants negligently sold and delivered the machine when they knew, or should have known, that it was not properly braced and, therefore, was not safe for use.

The plaintiff's testimony shows that he purchased this specific, designated, second-hand machine, selecting it himself as the machine he wanted because he recognized it and had formerly used it. He thoroughly inspected it at the time of the sale. Under those circumstances, no warranty as to its quality or fitness for the intended use can be implied. *Driver v. Snow,* 245 N.C. 223, 95 S.E. 2d 519; 46 Am. Jur., Sales § 360; 77 C.J.S., Sales, § 315; Anno. 78 A.L.R. 2d 594, 616.

There may, however, be an express warranty as to the quality and safety of an article sold as second-hand and there is authority to the effect that an agreement to overhaul a second-hand machine and put it in first class shape may constitute a warranty that the machine delivered pursuant to that agreement is free from structural defects. 46 Am. Jur., Sales, § 327. Any affirmation of fact or promise by the seller relating to the article sold is an express warranty if the natural tendency of the statement is to induce the buyer to purchase the article and the buyer does purchase it in reliance upon such statement. *Potter v. Supply Co.,* 230 N.C. 1, 51 S.E. 2d 908. If such a warranty is given, the seller's liability for its breach does not depend upon proof of his negligence but arises out of his contract. *Wyatt v. Equipment Co.,* 253 N.C. 355, 117 S.E. 2d 21; Williston on Sales, Revised Edition, § 327.

"The liability of the seller of an article in damages for breach of warranty includes all damages which the buyer incurred as a result of a breach of the warranty which may fairly be supposed to have been in the contemplation of the parties at the time of the sale, that is, which might naturally be expected to follow the breach of warranty, and the buyer may, in an action for breach of warranty, recover damages for personal injuries sustained in consequence of the breach complained of, if such injuries were in the contemplation of the parties at the time of the sale, or if they are such as might, in the natural or usual course of things, result from a breach of the warranty." 46 Am. Jur., Sales, § 801. See also: *Price v. Goodman,* 226 N.C. 223, 37 S.E. 2d 592; *Hodges v. Smith,* 159 N.C. 525, 75 S.E. 726.

The burden is upon the plaintiff to prove the giving of the warranty as alleged in his complaint, its breach and his injury as a natural con-

sequence of the breach and one which was contemplated by the parties at the time of the sale as likely to result therefrom. *Furst v. Taylor,* 204 N.C. 603, 169 S.E. 185; Strong, N. C. Index, Sales, § 14.

In the absence of a warranty, the liability of the seller of a machine for injuries sustained by the user thereof due to a defective condition must rest upon the theory that the seller was negligent in selling the machine for the contemplated use. The care required of a seller is certainly no greater than that required of a manufacturer. In this instance, the defendants were the manufacturers of the machine but had sold it and had reacquired it after it had been used for a long period of time. The plaintiff does not contend that the machine, as originally designed and constructed, was defective. His complaint is that at some later time a part was broken off and disappeared. He contends that the defendants, who were the original designer-manufacturers, should have observed the loss of this part when the machine came back into their hands. The difficulty confronting the plaintiff, upon this theory of his case, is that the absence of this part was equally observable to him and he had used this machine when it was in its original condition and the part in question had not been broken off.

It is true that a manufacturer, who produces and sells a new article, which, in the exercise of reasonable care, he should know is likely to cause injury in its ordinary use because of some latent defect or because it is inherently dangerous for such use, is liable to the buyer who, without any negligence of his own, so uses it and is injured by such defect or dangerous nature. *Wyatt v. Equipment Co., supra; Gwyn v. Motors, Inc.,* 252 N.C. 123, 113 S.E. 2d 302; *Lemon v. Lumber Co.,* 251 N.C. 675, 111 S.E. 2d 868; *Tyson v. Manufacturing Co.,* 249 N.C. 557, 107 S.E. 2d 170. However, in the absence of a warranty, the manufacturer-seller of even a new article is not liable for injury to the buyer-user by reason of a condition which is plainly observable.

The plaintiff's own testimony, interpreted in the light most favorable to him, shows that the defect, which he says was the cause of his injury, was not latent but was observable by anyone who inspected the machine. He, himself, had used this machine in the pulpwood operations of its former owner. There was then a chain running from each side of the A-frame to a steel arm projecting from the corresponding side of the chassis. When he and his employees set up the machine for his own operation of it, they knew the nature and purpose of the chain on the left side and they attached it to the A-frame. There was at that time, on the right side of the chassis, the broken stub of what had been the projecting arm from which a chain was originally intended to run to the right side of the A-frame. This condition was readily observable by anyone raising the A-frame into its working position. We

think the plaintiff's evidence fails to show negligence on the part of the defendants in not calling the absence of this chain to the plaintiff's attention.

We do not think the evidence offered by the plaintiff is sufficient to prove a warranty by the defendants that the machine, at the time it was sold and delivered to the plaintiff, was in a safe working condition and ready for use. Other parts were to be attached by the plaintiff and, after the A-frame was raised into the working position, it had to be braced in that position by the plaintiff. The statements that the salesman would get it "in working order" and "get it ready to go" would seem to mean only that the repairs he and the plaintiff had discussed would be made.

Even though the seller of a machine has expressly warranted it to be in good condition and safe for the contemplated use, or has been negligent in selling the machine in an unsafe condition, the buyer-user may not recover damages for injuries resulting from its use if he used it when he knew, or in the exercise of reasonable care should have known, that the machine was not in a safe condition and so contributed to his own injury. *Insurance Co. v. Chevrolet Co.,* 253 N.C. 243, 116 S.E. 2d 780; Williston on Sales, Revised Edition, § 614b; 46 Am. Jur., Sales, §§ 801, 808.

A judgment of nonsuit on the ground of contributory negligence may be entered only when the plaintiff's evidence, considered alone and taken in the light most favorable to him, so clearly establishes the defense that no other reasonable inference or conclusion can be drawn therefrom. *Cowan v. Transfer Co.,* 262 N.C. 550, 138 S.E. 2d 228; *Waters v. Harris,* 250 N.C. 701, 110 S.E. 2d 283; Strong, N. C. Index, Negligence, § 26. For such a ruling to be proper, it is also necessary that the answer has alleged the negligent act or omission on the part of the plaintiff which is so shown by the evidence. *Maynor v. Pressley,* 256 N.C. 483, 124 S.E. 2d 162; *Rodgers v. Thompson,* 256 N.C. 265, 123 S.E. 2d 785; *Messick v. Turnage,* 240 N.C. 625, 83 S.E. 2d 654; *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326; G.S. 1-139.

The plaintiff contends in his brief that the answer alleges contributory negligence only in that the plaintiff used the pulpwood loader in a manner and for a purpose other than that for which it was designed. He contends that the defendants have not alleged contributory negligence consisting of the plaintiff's use of the machine when he knew, or ought to have known, that it was unsafe due to the absence of the chain brace on the right side of the A-frame.

The answer alleges as one of the ways in which the plaintiff was negligent: "(e) Plaintiff knew or should have known by the exercise of reasonable care, observation and prudence, that the A-frame folded

DOUGLAS *v.* MALLISON.

back towards where he was seated for the purpose of transportation
* * * and plaintiff failed and neglected to take precautions to prevent
said frame from falling back towards him * * *."

G.S. 1-151 provides: "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties." We believe that the answer, so construed, alleges contributory negligence in the respect in question.

The record shows that the plaintiff filed a motion to make the answer more definite and certain as to the acts or omissions constituting contributory negligence. Thereupon, the defendants amended one sub-paragraph of the answer, dealing with a different specification of contributory negligence, but did not amend the allegation above quoted. The record does not show any order with reference to the motion to make the answer more definite and certain, so we conclude that the plaintiff elected to go to trial without seeking a more definite statement of the contention made by the above quoted allegation. He evidently understood the allegation as we now interpret it, for he offered evidence designed to justify his use of the machine in the condition in which it was. It is his evidence, and his alone, which is now under consideration.

The plaintiff's evidence shows clearly: He, and at least one of his employees, had used this identical machine before and, at that time, it had a chain on each side of the A-frame. He and his employees took the machine into the woods with the A-frame folded back upon the chassis. There they raised the A-frame and fastened the chain on the left side. He and his employees understood that the purpose of this chain was to brace the A-frame so as to prevent it from falling backward when power was applied to the cable. They saw, or could have seen, on the right side of the A-frame a broken remnant of the steel arm similar to that to which the chain on the left side was attached. This should have been a sufficient reminder or notice to them that the machine originally had, and needed, a chain on each side of the A-frame to prevent the A-frame from falling backward when strain was applied. This evidence, offered by the plaintiff, leads to the single conclusion that, if the defendants were negligent in selling and delivering the machine to the plaintiff without a chain and projecting arm on the right side of the A-frame, as the plaintiff contends, the plaintiff was also negligent in attempting to use the machine when he knew, or should have known, it to be in that condition, and his own negligence was one of the proximate causes of his injury.

The judgment of nonsuit is
Affirmed.