RAY A. VEACH v. BACON AMERICAN CORPORATION AND H. J. DAVIS.

(Filed 2 March, 1966.)

**1. Sales § 16—**

The seller of equipment manufactured by a third party may be held liable for injuries resulting to the purchaser in the use of the machinery only if the defect causing the injury was latent, and thus not reasonably discoverable by the purchaser, and the seller had knowledge or should have discovered the latent defect and, in the exercise of reasonable care, should have reasonably foreseen that it was likely to cause injury in ordinary use, and failed to warn the buyer of such defect.

**2. Appeal and Error § 51—**

On appeal from the denial of judgment of nonsuit, all the admitted evidence, whether competent or incompetent, must be considered.

**3. Sales § 16—**

In this action by plaintiff, the purchaser of reconditioned recapping equipment, to recover for injuries received when a buffing wheel disintegrated and parts of same struck plaintiff, causing the injury in suit, the evidence *is held* sufficient to permit the jury to find that the injury resulted from a latent defect of which the seller should have had knowledge, and that plaintiff, who was without prior experience with such equipment, was not guilty of contributory negligence as a matter of law.

**4. Evidence § 35—**

The testimony of a nonexpert witness must be based on facts of which he has personal knowledge, and therefore he may not testify upon the assumption of the use of machinery during a given number of hours each working day after its purchase by plaintiff, as to the condition of its buffer wheels, offered in evidence, at the time of purchase, or as to why its pins, holding its parts together, broke. An expert would not be competent to give such testimony *without the additional hypothesis that the* exhibit had remained in the same condition from the time of the accident to the time of the trial.

**5. Sales § 16—**

The purchaser of equipment, suing for personal injuries resulting from a defect therein, may not contend that the seller was negligent in failing to provide a guard for the equipment, since the absence of a guard is a patent defect. Further, in this case, plaintiff's complaint failed to specify the absence of the guard as an element of negligence.

**6. Trial § 33—**

It is error for the court to submit in its instructions to the jury a principle of law which is not supported by allegation and evidence.

**7. Sales § 14a—**

Liability for breach of warranty arises out of contract, irrespective of negligence.

**8. Sales § 5—**

Statement by a salesman that equipment had been completely rebuilt and reconditioned cannot constitute a warranty by the seller when the subsequently written agreement specifies that the seller guaranteed, for a specified period, that the equipment was free from defect in workmanship and material when used in normal service, and obligated itself only to make good defective part or parts returned, and that such guarantee was in lieu of all other guarantees, expressed or implied.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.

APPEALS by defendants and by plaintiff from *McConnell, J.,* June 7, 1965, Civil Session of FORSYTH, docketed and argued as No. 457 at Fall Term 1965.

Plaintiff alleged he was injured August 15, 1961, while "buffing" a tire of a customer of the recapping business operated by plaintiff and his partner, Raymond John McKeown, Jr., in the Town of Clemmons, N. C.; that the buffing wheel on the used buffing machine the partners had purchased from defendants "flew apart because of defective materials" and "a portion of said wheel . . . entered plaintiff's head"; that the negligence of defendants in specified particulars in connection with the sale and installation of the buffing machine proximately caused plaintiff's injuries; and that plaintiff's injuries were proximately caused by defendants' breach of their warranty "that all used equipment purchased by the plaintiff was reconditioned and repaired and in all respects in the same condition as new equipment."

Defendants, in a joint answer, denied all allegations as to negligence, warranty and breach thereof and the agency of Davis. They alleged the contract of March 11, 1961, covering the sale of equipment to plaintiff and his partner, was in writing. They pleaded, conditionally, that plaintiff's negligence in specified particulars was a proximate cause of his injuries.

Plaintiff offered evidence *tending* to show:

In "March or early April" of 1961, plaintiff and McKeown, his partner, as a part-time venture, started a tire recapping business in Clemmons, N. C. A contract dated March 11, 1961, executed by each of the partners and in the name of Bacon American Corporation by "H. J. Davis, Sales Representative," provided for the sale by the corporate defendant to the partners of the equipment listed therein for the total purchase price (payable in monthly installments) of $7,918.32. The list includes a "5 h. p. Lodi Buffer," with attachments, the listed purchase price therefor being $750.00.

In negotiations prior to the execution of said contract, when reference was made to the high cost of a new buffer, Davis stated "he had a good one, a used one that had been rebuilt and recon-

ditioned in his shop in Raleigh . . . it would be just as good . . . and was sitting in his warehouse on display." The partners did not see the Lodi Buffer until it was unloaded and installed in their place of business. At that time, Davis stated it was the Lodi Buffer "on the contract," "the one he had had reconditioned . . . (that) had been down in our warehouse" and that "it had been completely rebuilt."

While described as a Lodi Buffer, the *two* buffer wheels furnished with this equipment were manufactured by the B & J Manufacturing Company of Chicago, Illinois. In the operation of the buffer, only one buffer wheel at a time was used. *One* of the two buffer wheels is the portion of equipment directly involved.

In the operation of the Lodi Buffer, the shaft from the motor causes the buffer wheel to spin. The face of the tire is brought into contact with blades protruding from the spinning buffer wheel. Uneven and excess rubber is removed as a prerequisite to recapping a tire.

Each of the two B & J buffer wheels consisted of two circular metal plates, connected by eight metal pins, two pins for each of the four sections. Each pin passed from its terminal in the hole therefor in one plate, through each of six separators or "spacers" and through each of seven blades, to its terminal in the hole therefor in the opposite plate. In one plate, the pins were permanently imbedded ("bradded in") in the holes therefor. Ordinarily, there was no occasion to separate this plate from the pins. The other plate may be and was frequently removed from the pins in the process of inserting new blades.

While operating the buffer on August 15, 1961, plaintiff was struck and injured by a blade from the spinning buffer wheel. A customer took plaintiff to a doctor. The buffer continued to run. When McKeown arrived and cut off the motor, all of one section, blades, separators and pins, was gone with this exception: There remained in the plate where they had been permanently imbedded the ends of the two missing pins.

Exhibit 3 is the buffer wheel directly involved in plaintiff's injury. When offered and received in evidence, the separators and blades, but not the pins, in the three sections that were intact on August 15, 1961, had been removed. Exhibit 4, a complete buffer wheel, is the other buffer wheel included in the corporate defendant's sale to the partners.

Other evidence pertinent to decision will be referred to in the opinion.

At the conclusion of plaintiff's (the only) evidence, defendants moved that plaintiff be required "to elect upon which theory,

namely, warranty or negligence," he intended to proceed. Thereupon, the court "directed that that portion of the plaintiff's action based upon breach of warranty be dismissed." Plaintiff excepted and appealed, basing his appeal solely on his exception to said ruling. Plaintiff seeks consideration of his appeal only in the event this Court should reverse or award a new trial in plaintiff's negligence action.

The court overruled defendants' motion for judgment of nonsuit "as to that portion of the allegations and the evidence based upon negligence," and defendants excepted.

The court submitted, and the jury answered, the following issues: "1. Was the plaintiff injured by the negligence of the defendants, as alleged in the Complaint? ANSWER: Yes. 2. If so, did the plaintiff, by his own negligence, contribute to said injuries, as alleged in the Answer? ANSWER: No. 3. Was H. J. Davis the agent of the defendant Bacon American Corporation and acting within the scope of his agency in the sale of the Lodi Buffer and attachments to the plaintiff and his partner on March 11, 1961? ANSWER: Yes. 4. What amount, if any, is the plaintiff entitled to recover? ANSWER: $8,750.00."

Judgment for plaintiff, in accordance with the verdict, was entered. Defendants excepted and appealed.

*Roberts, Frye & Booth and White, Crumpler, Powell, Pfefferkorn & Green for plaintiff.*
*Deal, Hutchins & Minor for defendants.*

BOBBITT, J.

### DEFENDANTS' APPEAL.

The partners purchased the Lodi Buffer with knowledge it was used equipment and upon receipt and installation thereof had knowledge the manufacturer of the buffer wheels (as shown on Exhibits 3 and 4) was the B & J Manufacturing Company.

As to the seller of a chattel known to have been manufactured by another, the rule has been stated as follows: "A vendor of a chattel made by a third person which is bought as safe for use in reliance upon the vendor's profession of competence and care is subject to liability for bodily harm caused by the vendor's failure to exercise reasonable competence and care to supply the chattel in a condition safe for use." Restatement, Torts § 401. Under this rule, liability depends upon whether such seller, by the exercise of reasonable care, could have discovered the dangerous character or condition of the chattel. Restatement, Torts § 402; *Wyatt v. Equip-*

*ment Co.*, 253 N.C. 355, 360, 117 S.E. 2d 21, and cases cited; *Cf. Swaney v. Steel Co.*, 259 N.C. 531, 538, 131 S.E. 2d 601.

If, under the indicated circumstances, the seller knows or should have discovered a latent defect in the chattel of such nature that he, by the exercise of due care, could reasonably foresee it was likely to cause injury in the ordinary use thereof, and the seller fails to warn the buyer of such defect, the seller is liable to a buyer who, without any negligence of his own, makes ordinary use thereof and is injured on account of such defect. *Douglas v. Mallison*, 265 N.C. 362, 370, 144 S.E. 2d 138, and cases cited.

Admitted evidence, whether competent or incompetent, must be considered in passing on defendants' motion for nonsuit. *Early v. Eley*, 243 N.C. 695, 700-701, 91 S.E. 2d 919, and cases cited; *Kientz v. Carlton*, 245 N.C. 236, 246, 96 S.E. 2d 14.

The evidence, much of it circumstantial in nature, was sufficient, when considered in the light most favorable to plaintiff, to permit, but not to require, the jury to find as facts: (1) That the partners had no prior experience with buffers or other equipment used in connection with recapping tires; (2) that Davis was a man of knowledge and experience with reference to such equipment and the use thereof; (3) that plaintiff, while operating the buffer, was injured when struck by a blade that flew out from Exhibit 3 as the result of the breaking of the pins that had held it; (4) that on and prior to March 11, 1961, the pins of Exhibit 3, which held the blades and separators, had become worn to such extent as to constitute a hazard to the operator of the buffer, and that an inspection thereof by a person having knowledge and experience with such equipment would have disclosed the buffer wheel in this respect was unsafe for further use; and (5) that Davis failed to exercise due care to inspect Exhibit 3 in order to determine whether it was safe or unsafe or failed to exercise due care in his inspection thereof or after inspection thereof failed to warn the partners of the danger of using Exhibit 3 in the operation of the buffer.

The evidence, under the legal principles stated above, was sufficient, in our opinion, and we so hold, to require jury determination as to whether plaintiff was injured on account of the actionable negligence of defendants.

True, there is evidence of plaintiff's contributory negligence. "When a person has knowledge of a dangerous condition, a failure to warn him of what he already knows is without significance." *Petty v. Print Works*, 243 N.C. 292, 304, 90 S.E. 2d 717, and cases cited. Plaintiff testified he had disassembled Exhibit 3 a number of times in the process of inserting new blades. Each time the pins were completely exposed except the ends permanently imbedded in

one of the plates. He had operated the buffer approximately four months. Even so, his lack of prior experience with such equipment and the assurances given by Davis as to the condition of the equipment are to be considered in determining whether plaintiff, in the exercise of due care, could and should have observed the pins were worn to such an extent that further use of the buffer wheel with these pins was dangerous. In our opinion, and we so hold, plaintiff's evidence does not establish his contributory negligence so clearly that no other reasonable inference may be drawn therefrom. *Swaney v. Steel Co., supra.*

The conclusion reached is that the issues of negligence and contributory negligence were for jury determination and that defendants' motion for nonsuit was properly overruled.

The court admitted, over objection, opinion testimony of Cecil Gladstone Mock. Mock testified he had been in the tire recapping business for eight years; and, while he was not familiar with a Lodi Buffer, he was familiar with buffer wheels similar to Exhibit 4. He was then questioned as indicated below concerning Exhibit 3. The challenged testimony must be considered in the light of testimony tending to show the facts narrated in the following paragraphs.

McKeown identified Exhibit 3 as the buffer wheel on the buffer when he arrived at the shop and cut off the motor. He testified, over objection, he "could see that the buffing wheel had flew apart and there was blades on the floor," and that glass from broken neon lights and other debris "was all over the floor." Referring to Exhibit 3, he testified the section "where the two pins are broken" was out except for the ends of the two pins imbedded permanently in the holes therefor in one of the plates. He testified that blades, some broken and others whole, were scattered around on the floor.

Plaintiff testified he stopped at the shop on his way back to the hospital some two hours after his injury; that Exhibit 3 was "on the buffer, with one section out of it"; and that he told McKeown "to take it off and keep it."

McKeown testified Exhibit 3 was not used "after the date of the accident"; that the condition of Exhibit 3 at trial was the same as when he found it after the accident except the separators and blades in three of the sections had been removed, thereby exposing the six (unbroken) pins that had held the separators and blades in these three sections; and that, on each of these pins, there were worn places or "ridges" and "those are open and visible to the naked eye." McKeown testified Exhibit 3 was in his possession from the time he found it until he delivered it to plaintiff's attorney, and this occurred "several years ago" and since then Exhibit 3 had been "in somebody's possession other than (his) own."

No missing blades, separators or pins, or fragments thereof, from the missing section, were offered in evidence. There is no evidence as to when and by whom the three complete sections, except for the pins, were removed from Exhibit 3. Nor is there evidence as to where or under what conditions Exhibit 3 has been kept since it passed from McKeown's possession several years ago.

While there is evidence the Lodi Buffer was "a trade-in," used equipment, there is no evidence as to the date of its manufacture or of its sale as new equipment. Nor does the evidence disclose by whom it had been used or the time and circumstances of its prior use.

Testimony as to worn places or ridges or notches refers either to markings on the six (unbroken) pins presently available for inspection or to the ends of the two missing pins remaining in the holes in which they were permanently imbedded and the portion of the plate in the area of these holes and portions of pins.

When plaintiff offered Mr. Mock "as an expert in the field of tire recapping equipment, and particularly buffing wheels," the court stated: "I think he can express an opinion, but I do not know I have to find he is an expert." Suffice to say, there was no finding that Mock was an expert of any kind.

Referring to Exhibit 3, plaintiff's counsel asked this question: "Assume these facts, Mr. Mock: that the wheel which you are holding had been reconditioned completely in or around March 11, 1961, *(sic)* and had been used in buffing tires every work day afternoon from 5:00 till 9:00, or approximately that length of time, and had been used all day on Saturday from March 11th till August 15, 1961; now, do you have an opinion satisfactory to yourself as to whether or not this wheel had been completely reconditioned on or about March 11, 1961?" Defendants' objection was overruled and Mock answered: "No, sir, I don't believe it had." Defendants' motion to strike the answer was denied. Over defendants' objections, Mock was permitted to point out the bases for his opinion as to the condition of Exhibit 3 on March 11, 1961.

Referring to "where two pieces of spikes . . . or pegs are still remaining in this wheel (plate on Exhibit 3)," plaintiff's counsel asked this question: "Do you have an opinion satisfactory to yourself as to what portions of these remaining pegs that are exposed on the top side, or the inside portion of it, was holding these pins together at the time it flew apart?" Defendants' objection was overruled and Mock answered: "Yes, sir. It looks like a third—it was wore two-thirds through."

In other particulars, Mock was permitted to testify, over defendants' objections, to his opinions as to the condition of Exhibit 3 on March 11, 1961, and as to what occurred on August 15, 1961, on the basis of his inspection of Exhibit 3 in June 1965 and the assumed facts set forth in the first quoted question.

On cross-examination, Mock testified: "I have not seen these exhibits (Exhibits 3 and 4) before today. I do not know what their condition was back on August 15, 1961."

In the absence of a finding or admission that the witness is an expert, the competency of opinion evidence must be considered in relation to the rules applicable to nonexpert witnesses. *Kientz v. Carlton, supra,* and cases cited. A nonexpert witness may testify only as to facts of which he has personal knowledge. *Robbins v. Trading Post, Inc.,* 251 N.C. 663, 666, 111 S.E. 2d 884, and cases cited. In gist, Mock was permitted to testify over defendants' objections as to his opinion with reference to the condition of Exhibit 3 on March 11, 1961, and with reference to why the pins broke, solely on the basis of his inspection of Exhibit 3 in June 1965, and one assumed fact, namely, that Exhibit 3 was used by the partners during the hours indicated between March 11, 1961, and August 15, 1961. This testimony was incompetent and prejudicial. Indeed, a qualified expert could have testified to his opinion concerning the condition of Exhibit 3 on March 11, 1961, and as to what caused the pins to break, if they did break, only upon the hypothesis that the jury found as facts that Exhibit 3 was in the same condition in all relevant respects when exhibited to him in June 1965 as on August 15, 1961, immediately following plaintiff's injury. Stansbury, North Carolina Evidence, Second Edition, § 137.

The court charged the jury as follows: "*. . . or if the plaintiff has satisfied you from the evidence and by its greater weight that a reasonably prudent person in the same circumstances as that of the defendants would have delivered to the plaintiff a machine of this type with a guard over it; . . .* if the plaintiff has satisfied you in any one of these aspects, and . . . that such negligence on the part of the defendants was a proximate cause of the injury resulting to the plaintiff, and if you so find by the greater weight of the evidence, it would be your duty to answer the first issue YES." (Our italics.) Defendants excepted to the italicized portion of said excerpt.

There is no reference to the absence of "a guard over it" in plaintiff's specifications of negligence. Plaintiff offered and the court admitted solely for the purpose of illustrating the testimony of witnesses Lodi Bulletin No. 288 on which is portrayed a Lodi

Buffer referred to by plaintiff as "a fair representation of the type machinery that I am talking about . . . with the exception that the guard and the dust collector shown here was not the type that we got." Plaintiff also testified the Lodi Buffer they got "did not have a guard."

Assuming, but not deciding, it was contemplated that the Lodi Buffer involved herein would be equipped with a guard of some type, the absence of such guard was a patent, not a latent, defect, and hazards proximately caused by the absence of such a guard were reasonably foreseeable. *Insurance Co. v. Chevrolet Co.,* 253 N.C. 243, 116 S.E. 2d 780, and cases cited; *Douglas v. Mallison, supra.*

Neither plaintiff's pleading nor his evidence entitled plaintiff to recover on the ground his injury was caused by defendants' negligence in respect of failure to deliver a Lodi Buffer equipped with "a guard over it." Hence, the challenged portion of the quoted instruction was erroneous.

For the reasons indicated, defendants are entitled to a new trial on the issues arising on the pleadings in respect of whether plaintiff is entitled to recover on account of the alleged actionable negligence of defendants.

### PLAINTIFF'S APPEAL.

The award of a new trial on defendants' appeal necessitates consideration of plaintiff's appeal from what was in effect a nonsuit as to his alleged cause of action for breach of warranty.

A seller's liability for breach of warranty does not depend upon proof of his negligence but arises out of his contract. *Wyatt v. Equipment Co., supra; Douglas v. Mallison, supra.*

The partners, in said contract of March 11, 1961, ordered the equipment listed therein "SUBJECT TO THE TERMS AND CONDITIONS OF SALE ON REVERSE SIDE OF THIS SHEET."

Under "TERMS AND CONDITIONS OF SALE" appear, *inter alia,* the following:

"9. Seller guarantees all equipment manufactured by it to be free from defects in workmanship and material when used in normal service for a period of 90 days from date of delivery to the original purchaser, the obligation being limited to making good any part or parts which are returned to the factory, transportation charges prepaid and which, upon seller's examination prove to be defective. Buyer specifically and generally waives any and all claims against seller for loss of use of equipment or any other damage of any kind or nature. *This guarantee is in lieu of all other guarantees either*

*expressed or implied and no salesman or other individuals are authorized to assume for seller any other liability in connection with the sale."* (Our italics.)

While Davis' statements, nothing else appearing, would seem sufficient to constitute an express warranty, *Insurance Co. v. Chevrolet Co., supra,* and cases cited, in view of the italicized portion of the "TERMS AND CONDITIONS OF SALE," Davis' statements, being in conflict with the terms of the written agreement, do not constitute a warranty by the vendor, to wit, the corporate defendant, and are not competent as evidence of breach of warranty. Notwithstanding, as indicated above, Davis' statements with reference to the condition of the Lodi Buffer are relevant and competent as bearing upon whether plaintiff was contributorily negligent.

Our attention is called to the following notation on said contract: "$50.00 Max for Repairing Equipment." Much of the equipment sold under said contract was used equipment. There is no evidence as to what equipment was to be repaired or as to the nature of contemplated repairs. Suffice to say, the evidence to the effect the Lodi Buffer "had been" reconditioned and completely rebuilt at the time of the negotiations negates any suggestion that this notation refers in any way to it.

The conclusion reached is that the ruling involved in plaintiff's appeal, considered as a judgment of nonsuit in respect of plaintiff's alleged cause of action for breach of warranty, should be and is affirmed.

On defendants' appeal, new trial.

On plaintiff's appeal, affirmed.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.