FREDERICK R. JENKINS v. STARRETT CORPORATION, SOUTH-
ERN CONTRACTORS AND REFRIGERATION AND LONNIE S.
SMITH

No. 7110SC757

(Filed 2 February 1972)

1. **Rules of Civil Procedure § 50— motion for directed verdict — considera-
tion of defendant's evidence**

   In passing on defendant's motion for a directed verdict made at
   the close of all the evidence, defendant's evidence that tends to con-
   tradict or refute the plaintiff's evidence is not considered, but the
   other evidence presented by defendant may be considered to the extent
   that it clarifies the plaintiff's case. G.S. 1A-1, Rule 50(a).

2. **Rules of Civil Procedure § 50— motion for directed verdict — considera-
tion of all admitted evidence**

   All relevant evidence admitted by the trial court, whether compe-
   tent or not, must be accorded its full probative force in determining
   the correctness of a ruling on a motion for a directed verdict under
   Rule 50(a).

3. **Electricity § 7; Sales § 22— electric shock from ice machine — negli-
gence of former owner — insufficiency of evidence**

   In an action to recover for personal injuries resulting from a
   severe electrical shock received when plaintiff attempted to remove
   ice from an outdoor ice merchandiser, the three-pronged plug supplied
   by the manufacturer of the machine having been changed to a two-
   pronged plug which prevented it from being properly grounded, plain-
   tiff's evidence was insufficient to go to the jury on the issue of negli-
   gence of the former owner of the machine who sold it to the present

437

owner, where it tended to show only that the former owner had reason to change the plug to a two-pronged plug because the receptacle where the former owner installed the machine would accept only a two-pronged plug, and that the present owner would have had no reason to change the original plug because the receptacle where he installed the machine would accept a three-pronged plug, such evidence being insufficient to show that the former owner actually did change the plug.

**4. Electricity §§ 4, 7— violation of National Electrical Code — negligence per se**

The National Electrical Code, as approved and adopted by the State Building Code Council and filed with the Secretary of State, has the force and effect of law, and its violation is negligence *per se.*

**5. Electricity § 4— National Electrical Code — applicability to owner of ice machine**

Provisions of the National Electrical Code relating to equipment grounding were applicable to the owner of an outdoor ice merchandiser installed at a service station to sell ice to the public; consequently, the trial court properly allowed such provisions to be read to the jury in an action against the owner for injuries resulting from an electrical shock received by plaintiff when he attempted to remove ice from the merchandiser.

**6. Electricity § 7; Negligence § 29— electric shock from ice machine — negligence of owner**

Plaintiff's evidence was sufficient for the jury in an action against the owner of an outdoor ice merchandiser to recover for injuries resulting from an electrical shock received by plaintiff when he attempted to remove ice from the merchandiser, where it tended to show that the owner installed the merchandiser with a two-pronged plug which failed to ground it, that when the owner bought the merchandiser he made no inspection of the machine or its plug, that the owner made no effort to ground the merchandiser, and that the failure to ground the merchandiser was a violation of the National Electrical Code.

APPEAL by defendants Southern Contractors and Refrigeration and Lonnie S. Smith from *Brewer, Judge,* 25 January 1971 Session of Superior Court held in WAKE County.

The parties stipulated that the record filed in this court on 12 July 1971 constituted the record on appeal. Thereafter all the parties except the defendant Smith filed motions to add to the record on appeal. The motion of Southern Contractors and Refrigeration (Southern) was belatedly contested by Lonnie S. Smith (Smith), and Smith's motion was contested by Southern. After the case was set for oral argument and the parties could not agree as to what, if anything, should be added to the record

Jenkins v. Starrett Corp.

theretofore agreed upon, this court ordered the case remanded to the trial tribunal for settlement of the case on appeal. Judge Brewer settled the case on appeal.

Plaintiff instituted this action to recover for personal injuries received when he came into contact with the handle of an ice merchandiser owned by defendant Smith and manufactured by the Starrett Corporation (Starrett). The plaintiff alleged that on 13 June 1969, while attempting to purchase bagged ice from an outdoor merchandiser (a refrigerated self-service container) located at Edwards' Pure Oil Station (Edwards') in Raleigh, he received a severe electrical shock which rendered him unconscious and caused him other injury.

At the trial the evidence introduced by the various parties tended to establish: (1) that the ice merchandiser in question was sold by Starrett to Southern in April of 1964; (2) that Southern installed the merchandiser at Ferguson's Esso Service Center (Ferguson's); (3) that on 19 September 1966, Southern sold this and other ice merchandisers to a partnership of which the defendant Smith was the sole surviving owner on 13 June 1969; (4) in August of 1968, after Smith had purchased it, the ice merchandiser located at Ferguson's was disconnected and moved to the edge of the highway near a telephone booth about 125 feet from Ferguson's building, where it was allowed to remain unconnected by Smith for two or three months; (5) that Smith, his agents or employees, thereafter moved the merchandiser to Edwards' station where it was plugged in and operated without incident until 13 June 1969, the date of the injury to the plaintiff; (6) that Smith had full ownership and control of the merchandiser from the date of the sale in 1966, and, after installing it, maintained it and kept it filled with bagged ice pursuant to his oral contract with Edwards'; (7) that Southern had no obligation to and did not install, service or maintain the merchandiser after its sale to Smith in 1966; (8) that the injury to the plaintiff was due to the improper or non-existent grounding of the chassis of the merchandiser, either by means of a three-pronged plug and receptacle or by other acceptable means; (9) that the merchandiser was equipped with only a two-pronged plug on 13 June 1969; (10) that the receptacle into which the merchandiser was plugged at Edwards', on the date of the injury to the plaintiff, was equipped to receive a three-pronged plug; (11) that the plug on the merchandiser on this

date was a replacement plug and not the original three-pronged plug; and (12) that the receptacle at Ferguson's into which the merchandiser had originally been plugged was of the type that would receive only a two-pronged plug.

At the close of the plaintiff's evidence, Starrett moved for a directed verdict under Rule 50 of the Rules of Civil Procedure, and the motion was allowed. There was no appeal. Starrett is not now a party in this case.

Motions for a directed verdict were made by the defendants Southern and Smith after the close of plaintiff's evidence and renewed at the close of all the evidence and were denied.

Separate issues as to the negligence of Southern and Smith were answered in the affirmative, and the issue of damages was answered in the sum of $10,500. The defendants Southern and Smith appealed.

*Bailey, Dixon, Wooten & McDonald by Wright T. Dixon, Jr., and John N. Fountain for plaintiff appellee.*

*Broughton, Broughton, McConnell & Boxley by Charles P. Wilkins and J. Melville Broughton, Jr., for defendant appellant Southern.*

*Maupin, Taylor & Ellis by Thomas F. Ellis for defendant appellant Smith.*

MALLARD, Chief Judge.

### APPEAL OF SOUTHERN

The defendant Southern presents this question for decision on appeal: "Did the Court err in denying defendant Southern's motions for a directed verdict made at the close of Plaintiff's evidence and renewed at the close of all the evidence, in rendering a judgment on the verdict, and in denying defendant Southern's motion for judgment notwithstanding the verdict?"

[1] In determining whether the evidence was sufficient to withstand a motion for directed verdict under Rule 50(a) of the Rules of Civil Procedure, all of the evidence which would tend to support the plaintiff's claim "must be taken as true and viewed in the light most favorable to him, giving him the benefit every reasonable inference which may legitimately be

---

---

drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in his favor." *Maness v. Construction Company*, 10 N.C. App. 592, 179 S.E. 2d 816 (1971). See also, *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47 (1969). In passing upon such motion made at the close of all the evidence, a defendant's evidence that tends to contradict or refute the plaintiff's evidence is not considered, but the other evidence presented by a defendant may be considered to the extent that it clarifies the plaintiff's case. *Blanton v. Frye*, 272 N.C. 231, 158 S.E. 2d 57 (1967); *Hill v. Shanks*, 6 N.C. App. 255, 170 S.E. 2d 116 (1969).

[2] Furthermore, we do not agree with the defendant Southern's contention that *Powell v. Cross*, 263 N.C. 764, 140 S.E. 2d 393 (1965), prohibits our consideration of the evidence adduced by its co-defendant Smith in passing upon the sufficiency of all of the evidence to withstand a motion for a directed verdict. *Powell* stands for the proposition that a plaintiff, if necessary to prove his case, may himself call the defendant or defendants as his own witness(es), and may not complain if he fails to do so and the case against one defendant is nonsuited prior to the presentation of evidence by a co-defendant. In the present case, however, all of the evidence upon which the plaintiff relied was actually produced in open court, and the general rule is that "(a)ll relevant evidence admitted by the trial court, whether competent or not, must be accorded its full probative force in determining the correctness of its ruling upon a motion for judgment as of nonsuit." *Dixon v. Edwards*, 265 N.C. 470, 144 S.E. 2d 408 (1965). A motion for a directed verdict under Rule 50(a) of the new Rules of Civil Procedure presents substantially the same question as did a motion for judgment as of nonsuit under repealed G.S. 1-183. *Kelly v. Harvester Company*, 278 N.C. 153, 179 S.E. 2d 396 (1971). Therefore, the entire record, insofar as it is relevant, may be considered on this appeal.

The general underlying factual situation, as established by the admissions and stipulations of the parties and by the evidence adduced at trial, has already been set forth at adequate length. Although the plaintiff alleged in his original complaint and his amended complaint of 22 January 1971 that the defendant Southern "was negligent in that, having purchased said machine 1) It installed the said machine in an outdoor public place, knowing the same was to be used by this plaintiff or

others in said outdoor location," there is no serious question on this appeal as to the identity of the person who installed the merchandiser at the location where the plaintiff received his injury; that is, at Edwards', or under whose ownership and control the machine was at that time. The record, and in particular the testimony of the defendant Smith himself, clearly reveals that it was Smith who caused the merchandiser to be moved from Ferguson's (where it had been installed by Southern) to Edwards' (where the plaintiff was injured), and that Southern had no obligation to install or service the machine after its sale to Smith in 1966, nearly three years prior to the accident from which this case arose.

The plaintiff, however, attempted to show by inference that while the machine was under the ownership and control of Southern, the three-pronged plug supplied by the manufacturer was changed to a two-pronged plug; that the machine was then sold to Smith in this condition; that Smith, being unknowledgeable in matters of electricity, installed the machine by plugging the two-pronged plug into a three-prong outlet and otherwise failed to ground the machine properly; that the use of the two-pronged plug (and the absence of external grounding) prevented it from being properly grounded; that the lack of a proper ground allowed the chassis of the machine to become electrically charged on the date in question; and that Southern's changing of the plug constituted a violation of its duty of care toward the plaintiff and was a proximate cause of the plaintiff's injuries.

The principal evidentiary facts in the record from which such an inference could arise are that the receptacle at Ferguson's (where Southern had installed the merchandiser) was designed to accept only a two-pronged plug; that the receptacle at Edwards' (where Smith had installed the merchandiser) was designed to accept a three-prong plug; that the merchandiser was equipped with only a two-pronged plug at or shortly after the time of the accident on 13 June 1969; and that Smith testified that he had not changed the plug at any time that the merchandiser was under his control. Because this suggests that the defendant Smith would have had no logical reason to change the plug, but that defendant Southern might have had such a reason, plaintiff contends that these circumstances "unerringly point to Southern" as the party that changed the plug.

Southern persistently denied having changed the plug at any time, and its president testified that the installation at Ferguson's (where there was a two-pronged receptacle) was accomplished by means of a "cheater" adapter plug, a widely sold device which accepts a three-pronged plug but which itself plugs into a two-prong outlet, providing a ground (assuming the receptacle itself is grounded) by means of an external wire which is attached to the retaining screw of the receptacle plate.

The case against the defendant Southern was apparently submitted to the jury on the theory of liability embodied in §§ 401 and 402 of the Restatement of Torts 2d, and the case of *Veach v. American Corp.*, 266 N.C. 542, 146 S.E. 2d 793 (1966), relating to the liability of a seller of a second-hand chattel for latent defects. We think *Veach* is distinguishable, and in the case before us, we do not think that any latent defect is involved.

The decisive question, therefore, is whether or not the evidence adduced at the trial, when viewed in the light most favorable to the plaintiff, was sufficient to withstand the motion for directed verdict. "(T)he plaintiff must present evidence of actionable negligence on the part of the defendant in order to carry his case to the jury. To establish actionable negligence plaintiff 'must show: (1) That there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which defendant owed to the plaintiffs under the circumstances in which they were placed; and (2) that such negligent breach of duty was the proximate cause of the injury, a cause that produced the results in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts that existed. * * * ' " *Hubbard v. Oil Co.*, 268 N.C. 489, 151 S.E. 2d 71 (1966).

In the case before us, the plaintiff attempted to show that Southern had exchanged the three-pronged plug with which the merchandiser had been equipped by its manufacturer for a two-pronged plug, and that it sold the merchandiser to Smith so equipped, yet his own evidence is entirely devoid of any evidence of when or by whom the exchange was made. It is true that Smith testified that he personally had never changed "the electrical mechanism or cords" on any of the machines that he had purchased from Southern, but he also testified: "When I pur-

chased those ice merchandisers, I did not make an inspection of them. I did not hire an electrician to make an inspection of them." A witness for Southern denied that the exchange had been made during the period that the merchandiser was under its control; the only evidence as to the condition of the plug on the merchandiser at the time it was sold to the Smith partnership was the testimony of Southern's president.

The evidence is insufficient to establish that Southern removed the three-pronged plug from the machine and does not raise a question of credibility for the determination of a jury. The merchandiser appears to have been situated at all times on property not subject to the direct control and supervision of its owners and to have been allowed to sit unconnected and unattended by the roadside for several months in the Fall of 1966, after Southern had relinquished all ownership and control of it. Nearly three years then elapsed before the plaintiff was injured. We agree with Southern that to hold it liable under such circumstances would be to make it virtually a guarantor of facts and circumstances over which it could have no control.

[3] Inasmuch as the burden of establishing negligence is on the plaintiff, evidence which raises only a *conjecture* of negligence may not properly be submitted to the jury. To hold that evidence that a defendant *could have been* negligent is sufficient to go to a jury, in the absence of evidence, direct or circumstantial, that such a defendant *actually was* negligent, is to allow the jury to indulge in speculation and guesswork. See *McDonald v. Heating Co.,* 268 N.C. 496, 151 S.E. 2d 27 (1966); *Clark v. Scheld,* 253 N.C. 732, 117 S.E. 2d 838 (1961); *Boyd v. Harper,* 250 N.C. 334, 108 S.E. 2d 598 (1959); *Wall v. Trogdon,* 249 N.C. 747, 107 S.E. 2d 757 (1959); *Edens v. Adams,* 3 N.C. App. 431, 165 S.E. 2d 68 (1969). The plaintiff's contention that the defendant Southern may have had reason to replace the three-pronged plug and that defendant Smith did not does not rise to the dignity of evidence tending to show that Southern actually *did* make such an exchange. Therefore, we hold that the evidence was insufficient on this issue and that it was error to deny this defendant's motion for a directed verdict under Rule 50 at the close of the evidence. It follows, therefore, that the court should have also dismissed the cross-action of Smith against Southern.

### APPEAL OF SMITH

[4] The defendant Smith contends that it was error for the trial court to deny his motions for directed verdict and judgment notwithstanding the verdict. He assigns as error the fact that one of the plaintiff's witnesses was allowed to read specific sections from the National Electrical Code of 1968 regarding the grounding of electrical appliances, and that Judge Brewer later referred to and read from the same Code in charging the jury. (The National Electrical Code 1971 became effective 1 January 1972.) This defendant concedes in his brief that the National Electrical Code 1968, as approved and adopted by the State Building Code Council on 10 December 1968 and on file with the Secretary of State on 13 June 1969, had the force and effect of law and that its violation was negligence *per se*. See *Jenkins v. Electric Company*, 254 N.C. 553, 119 S.E. 2d 767 (1961); *Drum v. Bisaner*, 252 N.C. 305, 113 S.E. 2d 560 (1960). The pertinent and relevant parts of the National Electrical Code 1968 were admissible as evidence in this case. *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955).

[5] It is Smith's contention, however, that the National Electrical Code is not applicable *to him;* therefore, that the introduction of its provisions in the trial of the present case created an inappropriate and higher standard of care than that which he could be required to observe toward the plaintiff, and was erroneous. We do not agree.

Neither the State Building Code nor the National Electrical Code precisely defines the class of persons to which they are applicable. This is also true in a number of the decided cases which contain excellent discussions of the history and purposes of the State Building Code Council and Code; for example, *Jenkins v. Electric Company, supra; Drum v. Bisaner, supra;* and *Lutz Industries, Inc. v. Dixie Home Stores, supra.* These cases generally have involved the installation of electrical wiring and equipment by an electrician or electrical contractor, and Smith contends that the cases are distinguishable and not applicable to him because fixtures to real property were involved. We have carefully considered the State Building Code, the National Electrical Code and prior decided cases, however, and find nothing which would have restricted the application of the National Electrical Code 1968 to fixtures to real property and nothing which would specifically exempt this defendant from its requirements.

The pertinent portions of G.S. 143-138, at the time of the injury to the plaintiff, read as follows:

"(b) Contents of the Code—The North Carolina State Building Code, as adopted by the Building Code Council, may include . . . regulations of chimneys, heating appliances, elevators, and other facilities connected with the buildings; regulations governing plumbing, heating, air-conditioning . . . *and electrical systems.* (regulations for which electric systems may be the National Electric Code, as approved by the American Standards Association and filed with the Secretary of State); and other such reasonable rules and regulations pertaining to the construction of buildings and the installation of particular facilities therein as may be found reasonably necessary for the protection of the occupants of the building, its neighbors, and members of the public at large.

\*        \*        \*

(c) Standards to Be Followed in Adopting the Code.— \* \* \* Requirements of the Code shall conform to good engineering practice, as evidenced generally by the requirements of . . . the National Electric Code . . . . " (Emphasis added.)

The National Electrical Code 1968, which is on file in the office of the Secretary of State, provides in part:

"The purpose of this Code is the practical safeguarding *of persons* and of buildings and their contents *from hazards arising from the use of electricity* for light, heat, power, radio, signalling and for other purposes. Art. 90, § 1(a).

This Code contains basic minimum provisions considered necessary for safety. \* \* \* Art. 90, § 1(b).

It covers the electric conductors and *equipment installed within or on* public and private buildings and other premises, *including yards,* carnival and parking lots, and industrial substations; *also the conductors that connect the installations to a supply of electricity,* and other outside conductors adjacent to the premises . . . . " (Emphasis added.) Art. 90, § 2(a).

"Equipment" is defined as "(a) general term including material, fittings, devices, *appliances,* fixtures, apparatus and

the like used as a part of, or in connection with, an electrical installation." (Emphasis added.) Art. 100. An "appliance" is " . . . utilization equipment, generally other than industrial, normally built in standardized sizes or types, which is installed or connected as a unit to perform one or more functions such as clothes washing, air conditioning, food mixing, deep frying, etc." Art. 100. An "appliance—fixed" is one which "is fastened or otherwise secured at a specific location." Art. 100.

The defendant Smith's exception to the following portion of the court's instructions is without merit:

"The Court instructs you members of the jury, that North Carolina has adopted the National Electrical Code to govern the conduct of the installation of equipment; and I will read to you at this time, members of the jury, a section, 250-42, which deals with equipment grounding, which reads as follows: 'Under any of the following conditions exposed non-current carrying metal parts of fixed equipment which are liable to become energized shall be grounded. Where the equipment is located in a wet location and is not isolated, where the equipment is located within reach of a person who can make contact with any grounded surface or object, where the equipment is located within reach of a person standing on the ground.'

I also read to you members of the jury, the National Electrical Code, Section 250-57, as it deals with fixed equipment 'by means of a grounding conductor run with the power supply conductors in a cable assembly or flexible cord that is properly terminated in an approved grounding type attachment plug having a fixed grounding contacting member, the grounding conductor as a cable assembly may be uninsulated but where individual covering is provided for such conductors, it shall be finished in (sic) a continuous green color or a continuous green color with one or more yellow strips (sic).' "

In the second portion of this part of the charge, Judge Brewer was apparently referring to Art. 250, § 59(b) rather than § 57, as stated, but this inadvertence was not prejudicial to the defendant. We also note that Art. 250, § 45(d) requires, without any reference to Art. 250, § 42 (which was read by the judge and would also appear to be applicable), that:

"Under any of the following conditions, exposed non-current-carrying metal parts of cord and plug connected equipment, which are liable to become energized, shall be grounded: (d) In other than residential occupancies, (1) refrigerators, freezers, air conditioners . . . . "

[6]    This ice merchandiser was a refrigerator. We hold, therefore, that the National Electrical Code 1968 was applicable to the defendant Smith in the present case. Smith's own testimony clearly establishes that he installed the ice merchandiser at Edwards' where the plaintiff was injured; that he had made no inspection of the machine or its plug; and that he made no effort to ground it. There was also ample evidence from which the jury could find that the plaintiff was injured as the proximate result of the defendant Smith's failure to insure that the ice merchandiser was properly grounded, and that the failure to properly ground the machine was a violation of the National Electrical Code 1968 and otherwise a violation of the duty of care owed to this plaintiff as a member of the using public. Inasmuch as this defendant was actively engaged in vending ice to the public by means of an electrical appliance, and subject to the requirements of the National Electrical Code, his ignorance of electricity and of the Code is clearly no defense. We find no prejudicial error in the trial as to Smith.

Reversed as to defendant Southern.

No error as to defendant Smith.

Judges CAMPBELL and HEDRICK concur.