WILLIAM A. MAXWELL, PLAINTIFF v. MICHAEL P. DOYLE, INC., DEFENDANT

No. COA03-475

(Filed 18 May 2004)

**1. Appeal and Error— motion for directed verdict—standard for review—question of law—de novo**

De novo review was applied to the denial of a motion for a directed verdict because issues of law were presented. Decisions cited by defendant did not intend to hold that a decision on the sufficiency of the evidence should be reviewed under an abuse of discretion standard, but apply only when the trial court has exercised its discretion (such as reserving decision on a motion).

**2. Brokers— commission—dispute between two brokers— procuring cause rule—not applicable between brokers**

The procuring cause rule applies to a dispute between a seller and broker and has no application to this dispute between two commercial real estate brokers. The question here is whether an enforceable contract between the brokers to divide a commission has been breached.

**3. Contracts— breach—agreement between brokers—sufficiency of evidence**

There was sufficient evidence to submit to the jury a claim for breach of contract between two commercial real estate brokers to divide a commission from the sale of an apartment complex. The question of whether the sale was within a reasonable time was for the jury.

MAXWELL v. MICHAEL P. DOYLE, INC.

[164 N.C. App. 319 (2004)]

**4. Quantum Meruit— agreement between brokers—express contract—quantum meruit not available**

A directed verdict for defendant on a quantum meruit claim was proper because quantum meruit is not available when there is an express contract. Moreover, plaintiff offered no evidence of the reasonable value of his services.

**5. Discovery— denied—in camera review**

There was no abuse of discretion in the denial of plaintiff's motion to compel production of bank statements and tax returns in an action between two commercial realtors where the court reviewed the materials in camera, denied the motion because the materials were irrelevant, and ordered the materials sealed.

Appeal by plaintiff from order entered 15 October 2002 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 28 January 2004.

*Morgan, Reeves & Gilchrist, by Robert B. Morgan and C. Winston Gilchrist, for plaintiff-appellant.*

*Nelson Mullins Riley & Scarborough, L.L.P., by Christopher J. Blake and Reed J. Hollander, for defendant-appellee.*

GEER, Judge.

Plaintiff William A. Maxwell sued defendant Michael P. Doyle, Inc., alleging that he was entitled, under an oral agreement, to half of the commission received upon the sale of an apartment complex. At trial, the court granted defendant's motion for a directed verdict at the close of plaintiff's evidence. Because we hold that plaintiff presented sufficient evidence of breach of an enforceable agreement to withstand a motion for a directed verdict, we reverse and remand for a new trial.

Facts

William A. Maxwell is a real estate broker and agent specializing in commercial properties in the Cumberland County market. Defendant Michael P. Doyle, Inc. is a corporation located in Charlotte that provides commercial real estate brokerage services. Michael Doyle is the president and sole stockholder of the company and a licensed commercial real estate broker.

Plaintiff's evidence, viewed in the light most favorable to the plaintiff, tended to show the following. Beginning as early as 1997,

**MAXWELL v. MICHAEL P. DOYLE, INC.**

[164 N.C. App. 319 (2004)]

Doyle had attempted to convince Tom Wood, the owner of the Cambridge Arms Apartments in Fayetteville, to allow Doyle to attempt to sell the apartments. On 13 August 1997, Doyle wrote to Wood concerning the apartments, but did not receive a response. Doyle subsequently telephoned Wood a number of times to try to interest him in selling the apartments. Although Wood did not always return Doyle's telephone calls, Doyle did speak with Wood on the telephone approximately five times. Nevertheless, Doyle's efforts proved unsuccessful and Wood refused to sell the apartments.

On 13 September 2000, Doyle called Maxwell to discuss the Fayetteville real estate market. The two met in Fayetteville the following day and toured several properties. Later that day, Doyle asked if Maxwell knew Tom Wood. Doyle, who was called by Maxwell as an adverse witness, explained:

> I wanted to see if Bill Maxwell could give me some help on a property called Cambridge Arms, that I had failed to sell. And so I said to Bill . . . if you can make Mr. Tom Wood—the person that I had been talking to on and off for three or four years . . . —a seller—meaning he would sell his apartments—you and I can split a fee.

Maxwell testified that Doyle offered to split any commission from a sale of the apartments if Maxwell arranged a meeting with Wood and gave Doyle access to his Cambridge Arms files.

After agreeing to the proposition, Maxwell made his file available to Doyle, who removed various items. Maxwell also called Wood and convinced him to meet with Maxwell and Doyle at Wood's office on 19 September 2000. At the meeting, Wood stated that the apartments were not on the market and declined to sign a listing or commission agreement. He agreed, however, to consider any offers that plaintiff and Doyle might bring to him. After the meeting, Maxwell obtained some additional materials relating to the Cambridge Arms Apartments that he forwarded to Doyle.

Although no commission agreement was signed at the 19 September 2000 meeting, Doyle, unbeknownst to Maxwell, subsequently did obtain a listing and commission agreement from Wood for the sale of the Cambridge Arms. Wood telephoned Doyle approximately ten days after the 19 September meeting and the two met in early October. As a result of this meeting, Doyle prepared a listing and commission agreement that Wood signed on 15 October 2000. Doyle

MAXWELL v. MICHAEL P. DOYLE, INC.

[164 N.C. App. 319 (2004)]

signed the agreement, which provided for a two percent commission upon the sale of the Cambridge Arms, on 21 November 2000.

The Cambridge Arms was sold on 29 March 2001 for $14,000,000.00. Defendant earned a commission of $280,000.00 on the sale. Although Doyle and Maxwell had remained in contact during that time frame regarding other real estate matters, Doyle never informed Maxwell of his subsequent contacts with Tom Wood. Maxwell did not learn of the Cambridge Arms sale until he read about it in the newspaper. When he called Doyle and requested half of the commission, Doyle refused to pay him anything.

Plaintiff filed this breach of contract action against defendant on 27 September 2001 and the case was tried before a jury at the 30 September 2002 session of Cumberland County Superior Court. At the close of plaintiff's evidence, the trial court granted defendant's motion for directed verdict and dismissed plaintiff's claims.

### Standard of Review

[1] When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence. *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580 (1983). Any conflicts and inconsistencies in the evidence must be resolved in favor of the non-moving party. *Davis & Davis Realty Co., Inc. v. Rodgers*, 96 N.C. App. 306, 308-09, 385 S.E.2d 539, 541 (1989), *disc. review denied*, 326 N.C. 263, 389 S.E.2d 112 (1990). If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied. *Clark*, 65 N.C. App. at 610, 309 S.E.2d at 580.

As our Supreme Court has explained, questions concerning the sufficiency of the evidence to withstand a Rule 50 motion for directed verdict "present only a question of law; that question is whether substantial evidence introduced at trial would support a verdict in favor of the nonmoving party." *In re Will of Buck*, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999). *See also Roberts v. William N. & Kate B. Reynolds Memorial Park*, 281 N.C. 48, 53, 187 S.E.2d 721, 724 (1972) ("A motion for a directed verdict presents the question of whether, as a matter of law, the evidence offered by plaintiff, when considered in the light most favorable to the plaintiff, is sufficient to be submitted to the jury."); *Paul A. Bennett Realty Co. v. Hoots*, 7 N.C. App. 362,

**MAXWELL v. MICHAEL P. DOYLE, INC.**

[164 N.C. App. 319 (2004)]

364, 172 S.E.2d 215, 216 (1970) ("Whether the evidence is sufficient to carry the case to the jury is a question of law and is always to be decided by the court."). Because the trial court's ruling on a motion for a directed verdict addressing the sufficiency of the evidence presents a question of law, it is reviewed *de novo. Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003) ("We apply *de novo* review to . . . a trial court's denial of a motion for directed verdict . . . .").

Nonetheless, defendant urges us to apply an abuse of discretion standard, citing prior decisions of this Court. We are confident that those decisions did not intend to hold, contrary to well-established Supreme Court precedent, that a decision regarding the sufficiency of the evidence, a question of law, should be reviewed under an abuse of discretion standard. Instead, these decisions are more properly construed as applying an abuse of discretion standard only when the trial court has actually exercised its discretion, such as when the court chooses, in a close case, to reserve decision on a motion for a directed verdict until after the jury has rendered a verdict. *See, e.g., Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989) ("[W]here the question of granting a directed verdict is a close one, we have said that the better practice is for the trial court to reserve its decision on the motion and allow the case to be submitted to the jury."). A court does not exercise discretion when deciding a question of law.

Thus, we apply a *de novo* standard of review in considering the merits of plaintiff's appeal as to the motion for a directed verdict. This Court's review is limited to "those grounds asserted by the moving party at the trial level." *Freese v. Smith*, 110 N.C. App. 28, 34, 428 S.E.2d 841, 845-46 (1993). At trial, defendant argued in support of its motion for a directed verdict (1) that plaintiff had not presented sufficient evidence of an enforceable agreement; and (2) that plaintiff had not presented sufficient evidence that he was the procuring cause of the sale.

### Discussion

**[2]** At the outset, we note that the parties devote much of their briefs to strenuous argument over whether the contract required plaintiff to be the "procuring cause" of the sale. Defendant argues that plaintiff was required to show that he was the procuring cause of the sale and that he failed to do so. Plaintiff contends either that the terms of the contract altered the strict application of the procuring cause rule, or,

alternatively, that his evidence was sufficient to establish that he was in fact a procuring cause of the sale. We find that these arguments are beside the point.

Our Supreme Court set forth the procuring cause rule in *S & W Realty & Bonded Commercial Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 250-51, 162 S.E.2d 486, 491 (1968) (emphasis added) (internal citations omitted):

> Ordinarily, a broker with whom an owner's property is listed for sale becomes entitled to his commission whenever he pro-, cures a party who actually contracts for the purchase of the property at a price acceptable to the owner. *If any act of the broker in pursuance of his authority to find a purchaser is the initiating act which is the procuring cause of a sale ultimately made by the owner, the owner must pay the commission* provided the case is not taken out of the rule by the contract of employment.

The Court explained the basis for the rule: "The law does not permit an owner to reap the benefits of the broker's labor without just reward if he has requested a broker to undertake the sale of his property and accepts the results of service rendered at his request." *Id.* at 251, 162 S.E.2d at 491 (internal quotation marks omitted).

The procuring cause doctrine as adopted in *S & W Realty* thus relates to a dispute between the seller of property and the broker. Likewise, the question in the cases cited by the parties is whether the plaintiff broker was entitled to a commission from the defendant seller. This analysis has no application to circumstances such as those presented here: a breach of contract dispute between two brokers regarding a split of a commission already paid by the seller.

North Carolina courts have not previously discussed this issue specifically. Significantly, however, the few decisions addressing disputes between brokers over a commission do not mention the concept of procuring cause, but rather apply general contract principles. *See, e.g., Smith v. Barnes*, 236 N.C. 176, 72 S.E.2d 216 (1952) (no consideration supplied for agreement to split commission); *Chears v. Robert A. Young & Assoc., Inc.*, 49 N.C. App. 674, 272 S.E.2d 402 (1980) (rights under an agreement to divide commissions do not arise until the seller has paid the commission); *Bennett v. Hoots*, 7 N.C. App. 362, 172 S.E.2d 215 (1970) (no evidence of a contract to divide commissions).

## MAXWELL v. MICHAEL P. DOYLE, INC.

[164 N.C. App. 319 (2004)]

Decisions from other jurisdictions have expressly held that the procuring cause rule does not apply to disputes between brokers arising out of an agreement to divide a commission. As one court has explained:

> [W]here one broker sues another for a share of commissions after an agreement between them to that effect and the subsequent sale of the property involved[,] . . . the issue was not who was the "efficient producing cause" of each sale, but rather what were the terms of the agreement between the parties regarding the distribution of commissions earned.

*De Benedictis v. Gerechoff*, 134 N.J. Super. 238, 242-43, 339 A.2d 225, 228 (1975) (internal citations omitted). *See also Howell v. Steffey*, 204 A.2d 695, 696 (D.C. 1964) (when one broker who was not the procuring cause of a sale sues another broker for a share of the commission, the rights of the parties are governed by the terms of the brokers' agreement with each other "rather than by the contract of sale . . . or by rules which customarily govern the rights of real estate brokers to commission for the sale of land"); *Blake v. Gunkey*, 88 Kan. 272, 274, 128 P. 181, 182 (1912) (where two brokers agreed to work together and divide commissions from any sale of land, the question of which agent was the procuring cause of the sale was an "entirely immaterial matter"); *Drew v. Maxim*, 150 Me. 322, 324-25, 110 A.2d 602, 604 (1954) (in action for breach of fee-splitting contract with another broker, the doctrine of procuring cause is "not applicable"). Likewise, one commentator has observed:

> To entitle a broker to recover his share of compensation under the terms of a particular fee-splitting arrangement, he must show that he performed the services required of him in accordance with the terms of the contract. . . . [including] when he is required to merely initiate the transaction or otherwise assist in consummating the deal.

John D. Perovich, Annotation, *Construction of Agreement Between Real-Estate Agents to Share Commissions*, 71 A.L.R.3d 586, 591 (1976).

In light of the explanation of the procuring cause doctrine by our Supreme Court in *S & W Realty*, we agree with the jurisdictions cited above and hold that a broker suing another broker for a division of a commission pursuant to an agreement between the brokers need not establish that he or she was a procuring cause of the sale. Instead, the

MAXWELL v. MICHAEL P. DOYLE, INC.

[164 N.C. App. 319 (2004)]

question is whether there was a breach of an enforceable contract between the brokers.

[3] We must, therefore, determine whether Maxwell offered sufficient evidence of a breach of a valid, enforceable contract with Doyle for division of a commission. To be enforceable, the terms of a contract must be sufficiently definite and certain. *Brooks v. Hackney*, 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991). In addition, "[i]t is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995).

According to Maxwell's testimony, Maxwell and Doyle agreed:

If it materialized into a sale—and we shook hands on this in the beginning, that we were going to co-broker on a 50-50 basis—that we would work the Cambridge Arms on the same basis, because, even though he had known about them, he had not been able to make any headway, and since I know Mr. Wood, since I knew the apartments—and we shook hands and had a meeting of the minds right there—that if it materialized into a sale and there was a commission paid and a closing takes place, that I would get fifty percent of the commission and that I was to assist him by letting him go through my files . . . of all the materials.

Doyle subsequently sent a memo to Maxwell dated 18 September 2000, that stated:

After reflecting over the weekend regarding a potential fee schedule for us and a sale price, I strongly believe that we should increase Mr. Wood's price by $500,000.00 to $16,500,000.00 and obtain a Commission Agreement for 3%, of which we would split equally.

. . . .

I can be there Tuesday or anytime you can arrange meeting face to face with Tom Wood for lunch or any other reason. I'll plan on Tuesday if you think you can get us a visit.

In arguing that plaintiff's evidence did not establish sufficiently definite and certain contract terms, defendant relies largely on the fact that Maxwell used different phrases to describe the arrangement, such as "finder's fee" or "co-broker." Defendant does not, however, point to any evidence or cite to any authority establishing what these

labels mean or how they might render the contract indefinite. *See, e.g., Beasley-Kelso Assoc., Inc. v. Tenney,* 30 N.C. App. 708, 718-19, 228 S.E.2d 620, 626, *disc. review denied,* 291 N.C. 323, 230 S.E.2d 675 (1976) (noting testimony that a co-broker was simply "someone that is working with another broker"). As a result, any inconsistencies in plaintiff's descriptions of the agreement relate to his credibility—an issue for the jury to resolve. *See Davis & Davis Realty Co.,* 96 N.C. App. at 311, 385 S.E.2d at 542 (internal citation omitted) (trial court properly denied motion for directed verdict where parties disputed terms of an oral agreement involving a real estate commission because "[a]ny inconsistencies in the plaintiff's evidence with regard to when the commission was actually due and payable were for resolution by the jury. . . . [P]laintiff's evidence, albeit somewhat contradictory[,] . . . did not rise to the level of binding adverse testimony, as argued by defendants.")

Defendant also points to the fact that there was no agreement as to the time for performance. Our courts have, however, long held that "where a contract does not specify the time of performance . . ., the law will prescribe that performance must be within a reasonable time and that the contract will continue for a reasonable time, 'taking into account the purposes the parties intended to accomplish.'" *Rodin v. Merritt,* 48 N.C. App. 64, 71-72, 268 S.E.2d 539, 544 (quoting *Scarborough v. Adams,* 264 N.C. 631, 641, 142 S.E.2d 608, 615 (1965)), *disc. review denied,* 301 N.C. 402, 274 S.E.2d 226 (1980). *See also S & W Realty,* 274 N.C. at 254, 162 S.E.2d at 493-94 (when no time is specified in a contract for a commission, the sale must occur within "a reasonable time").

The determination of what constitutes a reasonable time for performance presents a mixed question of law and fact:

> If, from the admitted facts, the Court can draw the conclusion as to whether the time is reasonable or unreasonable, by applying to them a legal principle or a rule of law, then the question is one of law. But if different inferences may be drawn, or circumstances are numerous and complicated, and such that a definite legal rule cannot be applied to them, then the matter should be submitted to the jury. It is only when the facts are undisputed and different inferences cannot be reasonably drawn from them, that the question ever becomes one of law.

*Hardee's Food Systems, Inc. v. Hicks,* 5 N.C. App. 595, 599, 169 S.E.2d 70, 73 (1969) (internal quotation marks omitted). In this case, (1)

Maxwell and Doyle dispute when the sale was required to occur, (2) the issues may involve practices or customs within the real estate industry, and (3) it is not possible for this Court to determine based on plaintiff's evidence that a sale of an apartment complex eight months after the parties entered into their commission agreement necessarily exceeded a reasonable time. The question whether the sale occurred within a reasonable time from the parties' agreement was an issue for the jury.

We believe that Maxwell's evidence was sufficiently definite as to the material terms of the agreement: (1) he was required to arrange a meeting with Wood and allow Doyle access to his files; and (2) if a sale resulted within a reasonable period of time, he was then entitled to a 50-50 split of any commission. Defendant has not specified any other material terms necessary to the enforcement of the contract that were missing or indefinite and, after reviewing the record, we have been unable to identify any.

Since Maxwell offered evidence of the material terms of the agreement, that he performed his obligations under the agreement, and that Doyle later brokered the sale of the apartment complex and earned a sizeable commission that he failed to split with plaintiff, we hold that there was sufficient evidence of a breach of contract for this case to be submitted to the jury. We, therefore, reverse the trial court and remand for a new trial.

[4] Because the question may arise again, we address Maxwell's argument, in the alternative, that he is entitled to recover the reasonable value of his services under a theory of *quantum meruit*. We hold that the trial court properly granted a directed verdict as to this claim. Although we note that it appears plaintiff expressly abandoned this claim at trial, recovery in *quantum meruit* is not, in any event, available when, as here, there is an express contract. *Beckham v. Klein*, 59 N.C. App. 52, 58, 295 S.E.2d 504, 508 (1982) (internal citations omitted) ("But it is well established that where an express contract concerning the same subject matter is found, no contract will be implied. . . . All the services [plaintiff] rendered and upon which plaintiffs rely in their *quantum meruit* theory are services contemplated in the parties' express agreement and the express contract therefore controls."). Plaintiff also offered no evidence of the reasonable value of his services and without such evidence, the claim could not proceed to the jury. *Federal Realty Inv. Trust v. Belk-Tyler of Elizabeth City, Inc.*, 56 N.C. App. 363, 366, 289 S.E.2d 145, 147 (1982) ("We find nothing in the record from which the jury could have quantified

the value of defendant's benefit from plaintiff's services here."). A directed verdict was properly entered as to the claim based on *quantum meruit.*

**[5]** Finally, Maxwell argues that the trial court erred in denying his motion to compel production of defendant's corporate bank statements and tax returns for the relevant period. The trial court reviewed the materials *in camera,* denied the motion on the ground that the materials were not relevant, and ordered the materials sealed for the purpose of appellate review.

Rule 26(b)(1) of the Rules of Civil Procedure provides that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2003). A trial court's determination regarding relevance for purposes of discovery may be reversed only upon a showing of an abuse of discretion. *Adams v. Lovette,* 105 N.C. App. 23, 29, 411 S.E.2d 620, 624, *aff'd per curiam,* 332 N.C. 659, 422 S.E.2d 575 (1992). A trial court abuses its discretion only when its actions are manifestly unsupported by reason. *Id.* After reviewing the sealed documents, we are unable to conclude that the trial court's determination was manifestly unreasonable. This assignment of error is, therefore, overruled.

Reversed in part, affirmed in part, and remanded.

Chief Judge MARTIN and Judge STEELMAN concur.