IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-39

No. COA20-71

Filed 2 March 2021

Halifax County, No. 16 CVS 321

MATTIE HICKS and BARBARA SIGLER, Plaintiffs,

v.

KMD INVESTMENT SOLUTIONS, LLC, WENDY'S REAL ESTATE SOLUTIONS, LLC, and NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendants.

KMD INVESTMENT SOLUTIONS, LLC, Third-Party Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Third-Party Defendant.

Appeal by Third-Party Defendant from Judgment entered 13 August 2019 and order entered 26 August 2019 by Judge Cy A. Grant, Sr., in Halifax County Superior Court. Heard in the Court of Appeals 20 October 2020.

*Sanford Thompson, P.L.L.C., by Sanford W. Thompson, IV, and Perry, Perry & Perry, P.A., by Robert T. Perry and Alexander S. Perry, for plaintiffs-appellees.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Alexander G. Walton, for third-party defendant-appellant.*

MURPHY, Judge.

¶ 1    In this negligence case, in the light most favorable to Plaintiffs, there was sufficient circumstantial evidence to show the North Carolina Department of Transportation ("NCDOT") had constructive notice of a defective condition and failed to exercise due diligence to discover and remedy the defective condition, and thus breached its duty to maintain Highway 56 prior to the accident at issue. Accordingly, the trial court did not err by denying NCDOT's motions for directed verdict and judgment notwithstanding the verdict ("JNOV").

## **BACKGROUND**

¶ 2    On the night of 8 January 2014, Barbara Sigler was driving, with Mattie Hicks (collectively "Plaintiffs") as her passenger, on Highway 56, a two-lane highway. The temperature was below freezing and there had been no precipitation that day. As Plaintiffs drove through a curve, another driver, Candice Morgan, approaching in the other lane hit black ice and spun out of control into Plaintiffs, causing them significant injuries.

¶ 3    The lack of precipitation that day prompted responding emergency services to investigate the source of the frozen water. Uphill from the highway, it was discovered the pipes of a nearby well had burst, resulting in water running off the property into

a lateral ditch[1] adjacent to a road off Highway 56. One section of the ditch had become filled in with dirt and debris, such that this spot was flat with the surrounding land rather than below the surrounding land. Instead of running freely through this ditch and avoiding the road, the water ran downhill into the ditch, reached the filled in spot, and was pushed out onto the road. This water eventually flowed downhill, as it does, onto Highway 56, where it froze and ultimately formed the black ice that caused the accident in question.

Following the accident, Plaintiffs sued KMD Investment Solutions, LLC ("KMD"), the property owners of the land where the well is located. KMD in turn sued NCDOT as a third-party defendant, after which Plaintiffs joined NCDOT in their primary suit and filed a claim directly against NCDOT. At trial, the following testimony was presented regarding the visibility of the filled lateral ditch and the time it would have taken to fill in:

Plaintiffs presented the testimony of Edward Shane Mitchell, a volunteer fireman who responded to the scene of the accident. His testimony was presented through a videotaped deposition that was to be given "the same consideration and [was] to be judged as to credibility and weight and otherwise considered by [the jury],

---

[1] "Lateral ditches are trough-shaped channels oriented parallel to the roadway. Located along the roadside and in the medians, these ditches are constructed to collect and disperse surface water in a controlled manner. . . . [A] lateral ditch would be like the ditch [at issue in this case.]"

. . . as if the witness were present and gave from the witness stand the same answers

as were given by the witness when the deposition was taken." Plaintiffs elicited the

following testimony:

> [PLAINTIFFS:] Well I think you testified that you observed that there was what you called a flat spot in the ditch that goes along the north side of Highway 56.
>
> [MITCHELL:] Right.
>
> [PLAINTIFFS:] And when you say "flat spot," you mean that the ditch was filled in so it wasn't – it wasn't deep and it didn't have the slopes you would expect?
>
> [MITCHELL:] Right.
>
> [PLAINTIFFS:] And that was something you could observe just by looking at it, right?
>
> [MITCHELL:] Well, that night, yes.
>
> [PLAINTIFFS:] And – and during the day you could see if the ditch didn't have the – the "V" shape and it – it was filled up in the bottom; you could see that, couldn't you?
>
> [MITCHELL:] You – are you referring to as me just riding by there, looking, or –
>
> [PLAINTIFFS:] Well, if you had walked down the shoulder of that road, you could have seen if it wasn't raining that there was – that the ditch was filled in partway, couldn't you?
>
> [MITCHELL:] Someone could. I wouldn't say that I would.
>
> . . .
>
> [PLAINTIFFS:] Someone who was looking at the condition of that ditch would have been able to see that it was filled

in; is that right?

[MITCHELL:] I would suppose so.

¶ 6 Plaintiffs also called Jonathan Tyndall, who worked for NCDOT as County Maintenance Engineer in Franklin County, meaning he was "responsible for all of the maintenance and some construction on all state-maintained roads in that county" at the time of the accident. On direct examination, Plaintiffs elicited the following testimony:

> [PLAINTIFFS:] And you testified before that when you went out there, that you believed that the DOT ditch, the lateral ditch, was in your words substandard when you examined it right after this happened, didn't you?
>
> [TYNDALL:] It was at a point where it needed to be noted for maintenance.

¶ 7 Later, Plaintiffs called Vernon Hicks, who was a combat engineer in the Marine Corps and at the time of the accident worked for NCDOT in the Bridge Management Unit. On direct examination, Plaintiffs elicited the following testimony:

> [HICKS:] . . . . And so I looked down the road and walked down the ditchbank, and there's a flat spot in there. I guess it's maybe 50 or 100 feet or something like that down the road from the driveway. And I am trying to figure out how did the water get to this point where the sand was, down the road down there, looking at it from a drainage point of view, you know. Anyway --
>
> [PLAINTIFFS:] Let me ask you this. You said you saw a flat spot in the ditch?
>
> [HICKS:] Yes.

[PLAINTIFFS:] The ditch that is parallel to Highway 56?

[HICKS:] Yes, sir, on the north side of the road.

[PLAINTIFFS:] Now, was the flat spot that you saw in the ditch, was that flat spot clearly visible?

[HICKS:] Yes.

[PLAINTIFFS:] Did you have to be a trained engineer in order to see a flat spot?

[HICKS:] I don't think so, no, sir.

¶ 8       Plaintiffs also called Matt Sams, a civil engineer working for Accident Research Specialists, who testified as an expert in the field of forensic engineering, which "look[s] at the cause, nature, and effect of something that has gone wrong" in the areas of "transportation, roadways, hydrology, stormwater runoff[,] . . . buildings, bridges, structures, things of that nature, [and] also water treatment plants and things like that." On direct examination, Plaintiffs elicited the following testimony:

[PLAINTIFFS:] Does this filling up of the ditch take place over a period of time?

[SAMS:] Sure.

[PLAINTIFFS:] Why is that?

[SAMS:] It just -- you know, one clipping, one trip with the mower may not be enough to really, you know, put a significant amount of debris in there. But several trips over the years certainly do. If there is some soil erosion or something like that, that takes time as well.

¶ 9       KMD called Howard Rigsby, an engineer at a forensic engineering firm, to

testify as an expert "in the fields of hydrology, drainage engineering, and accident reconstruction." On cross-examination, Plaintiffs elicited the following testimony:

> [PLAINTIFFS:] And it takes a while for that to happen, doesn't it?
>
> . . .
>
> [RIGSBY:] If you're talking about erosion, yes, that takes a while to fill in this kind of ditch.
>
> [PLAINTIFFS:] It takes a lot of grass clippings and a lot of dirt coming off the slopes to fill in a ditch, doesn't it?
>
> [RIGSBY:] Yes.
>
> [PLAINTIFFS:] And that would happen over a long period of time, wouldn't it?
>
> [RIGSBY:] Yes.
>
> [PLAINTIFFS:] And if somebody would look at it, they would know that it was filled in, wouldn't they?
>
> [RIGSBY:] Yes.
>
> . . .
>
> [PLAINTIFFS:] Mr. Rigsby, in your opinion, for a ditch to completely fill up, like a ditch that has got 45 degree angles and two feet deep like the ditches out here, do you think it would take a period of years for that to fill up through natural erosion?
>
> [RIGSBY:] I would say over a year. I am from the mountains of North Carolina, so they can fill up pretty quick up there. But here in Franklinton, that flat topography, I would think over a year.

¶ 10    After Plaintiffs rested, NCDOT made a motion for directed verdict. The trial

court reserved its ruling on the motion for directed verdict and NCDOT renewed its motion at the close of all evidence, which was denied. The jury found only NCDOT liable for negligence. Following entry of judgment, NCDOT made a motion for judgment notwithstanding the verdict, which the trial court denied.

NCDOT appeals the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict.[2] Specifically, NCDOT contends Plaintiffs failed to prove each essential element of their negligence claim by failing to adequately prove breach based upon a lack of actual or constructive notice of the dangerous condition. NCDOT challenges no other element of negligence.

## ANALYSIS

"On appeal the standard of review for a [judgment notwithstanding the verdict] is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury." *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000).

> When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence. Any conflicts and inconsistencies in the evidence must be

---

[2] Plaintiffs attempt to cross-appeal for the first time in their appellee brief, contending the trial court erred in denying statutory interest on the compensatory damages NCDOT was ordered to pay. However, they did not file a notice of appeal and did not file a cross-appeal. We lack jurisdiction over this issue and dismiss it. *See Bd. of Dirs. of Queens Towers Homeowners' Ass'n, Inc. v. Rosenstadt*, 214 N.C. App. 162, 168-69, 714 S.E.2d 765, 770 (2011).

> resolved in favor of the non-moving party. If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied. . . . Because the trial court's ruling on a motion for a directed verdict addressing the sufficiency of the evidence presents a question of law, it is reviewed *de novo.*

*Maxwell v. Michael P. Doyle, Inc.*, 164 N.C. App. 319, 322-23, 595 S.E.2d 759, 761 (2004) (citations omitted). "Evidence which does no more than raise a possibility or conjecture of a fact is not sufficient to withstand a motion by [a] defendant for a directed verdict." *Ingold v. Carolina Power & Light Co.*, 11 N.C. App. 253, 259, 181 S.E.2d 173, 176 (1971); *Bruegge v. Mastertemp, Inc.*, 83 N.C. App. 508, 510, 350 S.E.2d 918, 919 (1986). "To hold that evidence that a defendant *could have been* negligent is sufficient to go to a jury, in the absence of evidence, direct or circumstantial, that such a defendant *actually was* negligent, is to allow the jury to indulge in speculation and guess work." *Jenkins v. Starrett Corp.*, 13 N.C. App. 437, 444, 186 S.E.2d 198, 203 (1972).

¶ 13        "It is seldom appropriate to direct a verdict in a negligence action." *Stanfield v. Tilghman*, 342 N.C. 389, 394, 464 S.E.2d 294, 297 (1995).

> In order for [a] plaintiff to survive a motion for a directed verdict or a JNOV, he must first show a *prima facie* case of negligence. . . . Therefore, [the] plaintiff must establish that (1) [the] defendant owed [the] plaintiff a duty of care; (2) [the] defendant's actions or failure to act breached that duty; (3) [the] defendant's breach was the actual and proximate cause of [the] plaintiff's injury; and (4) [the]

plaintiff suffered damages as a result of such breach.

*Smith v. Wal-Mart Stores, Inc.*, 128 N.C. App. 282, 286, 495 S.E.2d 149, 152 (1998) (internal citations omitted). Since NCDOT only challenges the denial of its motions for directed verdict and judgment notwithstanding the verdict based on insufficient evidence of breach, we do not address any other element. N.C. R. App. P. 28 (2021) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned.").

> Liability arises only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect in the street or sidewalk and the injury: he must also show that the officers of the town or city knew, or by ordinary diligence, might have known of the defect, and the character of the defect was such that injuries to travelers using its street or sidewalk in a proper manner might reasonably be foreseen. Actual notice is not required. Notice of a dangerous condition in a street or sidewalk will be imputed to the town or city, if its officers should have discovered it in the exercise of due care.

*Smith v. Hickory*, 252 N.C. 316, 318, 113 S.E.2d 557, 559 (1960).

> [N]otice may be either actual, which brings the knowledge of a fact directly home to the party, or constructive, which is defined as information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.

*Phillips ex rel. Bates v. N.C. Dep't of Transp.*, 200 N.C. App. 550, 558, 684 S.E.2d 725, 731 (2009) (quoting *State v. Poteat*, 163 N.C. App. 741, 746, 594 S.E.2d 253, 255-56

(2004)). "Constructive knowledge of a dangerous condition can be established in two ways: the plaintiff can present direct evidence of the duration of the dangerous condition, or the plaintiff can present circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time." *Thompson v. Wal-Mart Stores, Inc.*, 138 N.C. App. 651, 654, 547 S.E.2d 48, 50 (2000). Our Supreme Court has held:

> On the question of notice implied from the continued existence of a defect, no definite or fixed rule can be laid down as to the time required, and it is usually a question for the jury on the facts and circumstances of each particular case, giving proper consideration to the character of the structure, its material, the time it has been in existence and use, the nature of the defect, its placing, etc.

*Fitzgerald v. City of Concord*, 140 N.C. 110, 52 S.E. 309, 309-10 (1905) (holding the trial court erred in granting a nonsuit because it was for the jury to determine if there was constructive notice where the evidence showed that a culvert on a road with a 16 to 18 inch hole in it had been in this condition for several weeks).

¶ 14      NCDOT contends it did not breach its duty under a theory of constructive notice because it exercised proper diligence and there was no evidence of how long the condition existed.[3] We disagree. Here, there was more than a scintilla of evidence

---

[3] While issues related to actual notice and creation of the condition have been raised by the parties, we do not address these issues and express no opinion as to them because the

to support finding NCDOT breached its duty. There was circumstantial evidence, viewed in the light most favorable to the Plaintiffs, from which the jury could infer the ditch had been filled in for enough time that the condition would have been discovered had NCDOT exercised due diligence.

¶ 15        "In general, evidence of a defendant violating its own voluntary safety standards constitutes some evidence of negligence." *Thompson*, 138 N.C. App. at 656, 547 S.E.2d at 51. Here, according to NCDOT's internal guidelines, maintenance was required when ditches became 50% filled in to ensure they could effectively collect and disperse surface water. Further, the purpose and policy of NCDOT, including in Franklin County, was to prioritize safety. As a result, these guidelines were effectively safety guidelines for the roads of North Carolina, and violation of these guidelines constituted some evidence of breach of duty. Plaintiffs presented more than a scintilla of evidence of a violation of these guidelines, and therefore some evidence of breach, as there were multiple witnesses who testified to seeing the ditch completely filled in shortly after the accident.

¶ 16        There was also circumstantial evidence, viewed in the light most favorable to Plaintiffs, from which the finder of fact could infer the dangerous condition existed for some time, satisfying constructive notice, including evidence showing it would

---

trial court rightly denied NCDOT's motions for directed verdict and judgment notwithstanding the verdict on the theory of constructive notice.

take "over a year" for "a ditch that has got 45 degree angles and two feet deep like the ditch [in question], . . . to fill up through natural erosion," and the ditch was completely filled in requiring maintenance at the time of the accident. In the light most favorable to the Plaintiffs, this evidence shows the ditch took longer than a year to completely fill in, and it would have been at least halfway filled in for at least six months.[4] Read together with NCDOT's guidelines requiring it to note any ditch more than 50% filled in for maintenance, and viewed in the light most favorable to Plaintiffs, this evidence shows the ditch was in violation of NCDOT guidelines for at least six months. Since the inquiry into whether constructive notice has been established by the time period a deficient condition has existed is a fact sensitive inquiry for the jury, the six month frame here was sufficient to satisfy the Plaintiffs' burden on a motion for directed verdict and was properly submitted to the jury.

¶ 17    Additionally, the evidence, viewed in the light most favorable to the Plaintiffs, showed NCDOT had at least six months to discover the ditch filling-in beyond 50%, which was conspicuous at the time it was completely filled in,[5] through its employees

---

[4] The jury could reasonably infer it would take at least six months for the ditch to become 50% filled in from the expert testimony that it would take over one year for the ditch to become 100% filled in. *See Maxwell*, 164 N.C. App. at 322, 595 S.E.2d at 761 ("When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence.").

[5] We note that although there is no testimony indicating the process of the ditch filling in would have been conspicuous, if the completely filled in ditch was conspicuous, viewing

or contractors mowing the area, its employees inspecting roads in the county, and its employees driving the county outside of work, all of whom had a duty or expectation to report such a problem according to their supervisor. The alleged failure to discover the deficiency in this ditch over the course of those six months constitutes more than a scintilla of evidence NCDOT did not exercise due diligence.

¶ 18 Altogether, as set out above, there was more than a scintilla of evidence NCDOT breached its duty by failing to maintain the completely filled ditch, which had been at least half filled, in violation of NCDOT guidelines, for at least six months, and, had NCDOT exercised due diligence, it would have discovered the "clearly visible" deficient ditch through its review of Highway 56 and the surrounding areas.

¶ 19 Furthermore, the cases on which NCDOT relies to assert otherwise are not controlling here. The cases cited focus on the length of time required to show constructive notice in cases regarding defective sidewalks, in which we found three and four years was not sufficient to establish constructive notice. *See Desmond v. City of Charlotte*, 142 N.C. App. 590, 544 S.E.2d 269 (2001) (relating to a 0.5 inch elevation difference between sidewalk concrete slabs for 1-2 years prior to the

---

the evidence in the light most favorable to the Plaintiffs and giving them every reasonable inference, the process of the ditch going from 50% filled in to completely filled in was conspicuous. *See Maxwell*, 164 N.C. App. at 322, 595 S.E.2d at 761 ("When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence.").

incident, and at the time the difference was 1.6 inches); *Willis*, 137 N.C. App. 762, 529 S.E.2d 691 (2000) (relating to a 1.25 inch elevation difference between sidewalk concrete slabs). In the specific circumstance of these cases, the defect was minor and difficult to observe. However, here, there was evidence from multiple witnesses showing that the defect in the ditch was "clearly visible"; after "[taking] a look at [the road with the ditch]" the ditch "was at a point where it needed to be noted for maintenance"; and "[the filled in ditch] was something you could observe just by looking at it[.]" Thus, this case is distinct from *Willis* and *Desmond*.

## CONCLUSION

There was more than a scintilla of evidence to support the jury finding NCDOT had constructive notice of the deficient condition and breached its duty. Viewing the evidence in the light most favorable to the Plaintiffs, the filling in of the ditch beyond 50%, in violation of NCDOT guidelines, would have been conspicuous for at least six months prior to Plaintiffs' accident. NCDOT's motions for directed verdict and judgment notwithstanding the verdict were properly denied.

AFFIRMED.

Judges ZACHARY and COLLINS concur.