IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-39

 No. COA20-71

 Filed 2 March 2021

Halifax County, No. 16 CVS 321

MATTIE HICKS and BARBARA SIGLER, Plaintiffs,

 v.

KMD INVESTMENT SOLUTIONS, LLC, WENDY’S REAL ESTATE SOLUTIONS,
LLC, and NORTH CAROLINA DEPARTMENT OF TRANSPORTATION,
Defendants.

__________________________________________________________

KMD INVESTMENT SOLUTIONS, LLC, Third-Party Plaintiff,

 v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Third-Party
Defendant.

 Appeal by Third-Party Defendant from Judgment entered 13 August 2019 and

order entered 26 August 2019 by Judge Cy A. Grant, Sr., in Halifax County Superior

Court. Heard in the Court of Appeals 20 October 2020.

 Sanford Thompson, P.L.L.C., by Sanford W. Thompson, IV, and Perry, Perry
 & Perry, P.A., by Robert T. Perry and Alexander S. Perry, for plaintiffs-
 appellees.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Alexander G. Walton, for third-party defendant-appellant.

 MURPHY, Judge.
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

¶1 In this negligence case, in the light most favorable to Plaintiffs, there was

 sufficient circumstantial evidence to show the North Carolina Department of

 Transportation (“NCDOT”) had constructive notice of a defective condition and failed

 to exercise due diligence to discover and remedy the defective condition, and thus

 breached its duty to maintain Highway 56 prior to the accident at issue. Accordingly,

 the trial court did not err by denying NCDOT’s motions for directed verdict and

 judgment notwithstanding the verdict (“JNOV”).

 BACKGROUND

¶2 On the night of 8 January 2014, Barbara Sigler was driving, with Mattie Hicks

 (collectively “Plaintiffs”) as her passenger, on Highway 56, a two-lane highway. The

 temperature was below freezing and there had been no precipitation that day. As

 Plaintiffs drove through a curve, another driver, Candice Morgan, approaching in the

 other lane hit black ice and spun out of control into Plaintiffs, causing them

 significant injuries.

¶3 The lack of precipitation that day prompted responding emergency services to

 investigate the source of the frozen water. Uphill from the highway, it was discovered

 the pipes of a nearby well had burst, resulting in water running off the property into
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 a lateral ditch1 adjacent to a road off Highway 56. One section of the ditch had become

 filled in with dirt and debris, such that this spot was flat with the surrounding land

 rather than below the surrounding land. Instead of running freely through this ditch

 and avoiding the road, the water ran downhill into the ditch, reached the filled in

 spot, and was pushed out onto the road. This water eventually flowed downhill, as it

 does, onto Highway 56, where it froze and ultimately formed the black ice that caused

 the accident in question.

¶4 Following the accident, Plaintiffs sued KMD Investment Solutions, LLC

 (“KMD”), the property owners of the land where the well is located. KMD in turn

 sued NCDOT as a third-party defendant, after which Plaintiffs joined NCDOT in

 their primary suit and filed a claim directly against NCDOT. At trial, the following

 testimony was presented regarding the visibility of the filled lateral ditch and the

 time it would have taken to fill in:

¶5 Plaintiffs presented the testimony of Edward Shane Mitchell, a volunteer

 fireman who responded to the scene of the accident. His testimony was presented

 through a videotaped deposition that was to be given “the same consideration and

 [was] to be judged as to credibility and weight and otherwise considered by [the jury],

 1 “Lateral ditches are trough-shaped channels oriented parallel to the roadway.
 Located along the roadside and in the medians, these ditches are constructed to collect and
 disperse surface water in a controlled manner. . . . [A] lateral ditch would be like the ditch
 [at issue in this case.]”
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

. . . as if the witness were present and gave from the witness stand the same answers

as were given by the witness when the deposition was taken.” Plaintiffs elicited the

following testimony:

 [PLAINTIFFS:] Well I think you testified that you
 observed that there was what you called a flat spot in the
 ditch that goes along the north side of Highway 56.

 [MITCHELL:] Right.

 [PLAINTIFFS:] And when you say “flat spot,” you mean
 that the ditch was filled in so it wasn’t – it wasn’t deep and
 it didn’t have the slopes you would expect?

 [MITCHELL:] Right.

 [PLAINTIFFS:] And that was something you could observe
 just by looking at it, right?

 [MITCHELL:] Well, that night, yes.

 [PLAINTIFFS:] And – and during the day you could see if
 the ditch didn’t have the – the “V” shape and it – it was
 filled up in the bottom; you could see that, couldn’t you?

 [MITCHELL:] You – are you referring to as me just riding
 by there, looking, or –

 [PLAINTIFFS:] Well, if you had walked down the shoulder
 of that road, you could have seen if it wasn’t raining that
 there was – that the ditch was filled in partway, couldn’t
 you?

 [MITCHELL:] Someone could. I wouldn’t say that I would.

 ...

 [PLAINTIFFS:] Someone who was looking at the condition
 of that ditch would have been able to see that it was filled
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 in; is that right?

 [MITCHELL:] I would suppose so.

¶6 Plaintiffs also called Jonathan Tyndall, who worked for NCDOT as County

 Maintenance Engineer in Franklin County, meaning he was “responsible for all of

 the maintenance and some construction on all state-maintained roads in that county”

 at the time of the accident. On direct examination, Plaintiffs elicited the following

 testimony:

 [PLAINTIFFS:] And you testified before that when you
 went out there, that you believed that the DOT ditch, the
 lateral ditch, was in your words substandard when you
 examined it right after this happened, didn’t you?

 [TYNDALL:] It was at a point where it needed to be noted
 for maintenance.

¶7 Later, Plaintiffs called Vernon Hicks, who was a combat engineer in the

 Marine Corps and at the time of the accident worked for NCDOT in the Bridge

 Management Unit. On direct examination, Plaintiffs elicited the following testimony:

 [HICKS:] . . . . And so I looked down the road and walked
 down the ditchbank, and there’s a flat spot in there. I guess
 it’s maybe 50 or 100 feet or something like that down the
 road from the driveway. And I am trying to figure out how
 did the water get to this point where the sand was, down
 the road down there, looking at it from a drainage point of
 view, you know. Anyway --

 [PLAINTIFFS:] Let me ask you this. You said you saw a
 flat spot in the ditch?

 [HICKS:] Yes.
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 [PLAINTIFFS:] The ditch that is parallel to Highway 56?

 [HICKS:] Yes, sir, on the north side of the road.

 [PLAINTIFFS:] Now, was the flat spot that you saw in the
 ditch, was that flat spot clearly visible?

 [HICKS:] Yes.

 [PLAINTIFFS:] Did you have to be a trained engineer in
 order to see a flat spot?

 [HICKS:] I don’t think so, no, sir.

¶8 Plaintiffs also called Matt Sams, a civil engineer working for Accident

 Research Specialists, who testified as an expert in the field of forensic engineering,

 which “look[s] at the cause, nature, and effect of something that has gone wrong” in

 the areas of “transportation, roadways, hydrology, stormwater runoff[,] . . . buildings,

 bridges, structures, things of that nature, [and] also water treatment plants and

 things like that.” On direct examination, Plaintiffs elicited the following testimony:

 [PLAINTIFFS:] Does this filling up of the ditch take place
 over a period of time?

 [SAMS:] Sure.

 [PLAINTIFFS:] Why is that?

 [SAMS:] It just -- you know, one clipping, one trip with the
 mower may not be enough to really, you know, put a
 significant amount of debris in there. But several trips
 over the years certainly do. If there is some soil erosion or
 something like that, that takes time as well.

¶9 KMD called Howard Rigsby, an engineer at a forensic engineering firm, to
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 testify as an expert “in the fields of hydrology, drainage engineering, and accident

 reconstruction.” On cross-examination, Plaintiffs elicited the following testimony:

 [PLAINTIFFS:] And it takes a while for that to happen,
 doesn’t it?

 ...

 [RIGSBY:] If you’re talking about erosion, yes, that takes a
 while to fill in this kind of ditch.

 [PLAINTIFFS:] It takes a lot of grass clippings and a lot of
 dirt coming off the slopes to fill in a ditch, doesn’t it?

 [RIGSBY:] Yes.

 [PLAINTIFFS:] And that would happen over a long period
 of time, wouldn’t it?

 [RIGSBY:] Yes.

 [PLAINTIFFS:] And if somebody would look at it, they
 would know that it was filled in, wouldn’t they?

 [RIGSBY:] Yes.

 ...

 [PLAINTIFFS:] Mr. Rigsby, in your opinion, for a ditch to
 completely fill up, like a ditch that has got 45 degree angles
 and two feet deep like the ditches out here, do you think it
 would take a period of years for that to fill up through
 natural erosion?

 [RIGSBY:] I would say over a year. I am from the
 mountains of North Carolina, so they can fill up pretty
 quick up there. But here in Franklinton, that flat
 topography, I would think over a year.

¶ 10 After Plaintiffs rested, NCDOT made a motion for directed verdict. The trial
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 court reserved its ruling on the motion for directed verdict and NCDOT renewed its

 motion at the close of all evidence, which was denied. The jury found only NCDOT

 liable for negligence. Following entry of judgment, NCDOT made a motion for

 judgment notwithstanding the verdict, which the trial court denied.

¶ 11 NCDOT appeals the trial court’s denial of its motions for directed verdict and

 judgment notwithstanding the verdict.2 Specifically, NCDOT contends Plaintiffs

 failed to prove each essential element of their negligence claim by failing to

 adequately prove breach based upon a lack of actual or constructive notice of the

 dangerous condition. NCDOT challenges no other element of negligence.

 ANALYSIS

¶ 12 “On appeal the standard of review for a [judgment notwithstanding the verdict]

 is the same as that for a directed verdict, that is whether the evidence was sufficient

 to go to the jury.” Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness

 Church of God, Inc., 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000).

 When considering a motion for a directed verdict, a trial
 court must view the evidence in the light most favorable to
 the non-moving party, giving that party the benefit of every
 reasonable inference arising from the evidence. Any
 conflicts and inconsistencies in the evidence must be

 2 Plaintiffs attempt to cross-appeal for the first time in their appellee brief, contending

 the trial court erred in denying statutory interest on the compensatory damages NCDOT was
 ordered to pay. However, they did not file a notice of appeal and did not file a cross-appeal.
 We lack jurisdiction over this issue and dismiss it. See Bd. of Dirs. of Queens Towers
 Homeowners’ Ass’n, Inc. v. Rosenstadt, 214 N.C. App. 162, 168-69, 714 S.E.2d 765, 770 (2011).
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 resolved in favor of the non-moving party. If there is more
 than a scintilla of evidence supporting each element of the
 non-moving party’s claim, the motion for a directed verdict
 should be denied. . . . Because the trial court’s ruling on a
 motion for a directed verdict addressing the sufficiency of
 the evidence presents a question of law, it is reviewed de
 novo.

 Maxwell v. Michael P. Doyle, Inc., 164 N.C. App. 319, 322-23, 595 S.E.2d 759, 761

 (2004) (citations omitted). “Evidence which does no more than raise a possibility or

 conjecture of a fact is not sufficient to withstand a motion by [a] defendant for a

 directed verdict.” Ingold v. Carolina Power & Light Co., 11 N.C. App. 253, 259, 181

 S.E.2d 173, 176 (1971); Bruegge v. Mastertemp, Inc., 83 N.C. App. 508, 510, 350 S.E.2d

 918, 919 (1986). “To hold that evidence that a defendant could have been negligent

 is sufficient to go to a jury, in the absence of evidence, direct or circumstantial, that

 such a defendant actually was negligent, is to allow the jury to indulge in speculation

 and guess work.” Jenkins v. Starrett Corp., 13 N.C. App. 437, 444, 186 S.E.2d 198,

 203 (1972).

¶ 13 “It is seldom appropriate to direct a verdict in a negligence action.” Stanfield

 v. Tilghman, 342 N.C. 389, 394, 464 S.E.2d 294, 297 (1995).

 In order for [a] plaintiff to survive a motion for a directed
 verdict or a JNOV, he must first show a prima facie case of
 negligence. . . . Therefore, [the] plaintiff must establish
 that (1) [the] defendant owed [the] plaintiff a duty of care;
 (2) [the] defendant’s actions or failure to act breached that
 duty; (3) [the] defendant’s breach was the actual and
 proximate cause of [the] plaintiff’s injury; and (4) [the]
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 plaintiff suffered damages as a result of such breach.

Smith v. Wal-Mart Stores, Inc., 128 N.C. App. 282, 286, 495 S.E.2d 149, 152 (1998)

(internal citations omitted). Since NCDOT only challenges the denial of its motions

for directed verdict and judgment notwithstanding the verdict based on insufficient

evidence of breach, we do not address any other element. N.C. R. App. P. 28 (2021)

(“The scope of review on appeal is limited to issues so presented in the several briefs.

Issues not presented and discussed in a party’s brief are deemed abandoned.”).

 Liability arises only for a negligent breach of duty, and for
 this reason it is necessary for a complaining party to show
 more than the existence of a defect in the street or sidewalk
 and the injury: he must also show that the officers of the
 town or city knew, or by ordinary diligence, might have
 known of the defect, and the character of the defect was
 such that injuries to travelers using its street or sidewalk
 in a proper manner might reasonably be foreseen. Actual
 notice is not required. Notice of a dangerous condition in a
 street or sidewalk will be imputed to the town or city, if its
 officers should have discovered it in the exercise of due
 care.

Smith v. Hickory, 252 N.C. 316, 318, 113 S.E.2d 557, 559 (1960).

 [N]otice may be either actual, which brings the knowledge
 of a fact directly home to the party, or constructive, which
 is defined as information or knowledge of a fact imputed by
 law to a person (although he may not actually have it),
 because he could have discovered the fact by proper
 diligence, and his situation was such as to cast upon him
 the duty of inquiring into it.

Phillips ex rel. Bates v. N.C. Dep’t of Transp., 200 N.C. App. 550, 558, 684 S.E.2d 725,

731 (2009) (quoting State v. Poteat, 163 N.C. App. 741, 746, 594 S.E.2d 253, 255-56
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 (2004)). “Constructive knowledge of a dangerous condition can be established in two

 ways: the plaintiff can present direct evidence of the duration of the dangerous

 condition, or the plaintiff can present circumstantial evidence from which the fact

 finder could infer that the dangerous condition existed for some time.” Thompson v.

 Wal-Mart Stores, Inc., 138 N.C. App. 651, 654, 547 S.E.2d 48, 50 (2000). Our Supreme

 Court has held:

 On the question of notice implied from the continued
 existence of a defect, no definite or fixed rule can be laid
 down as to the time required, and it is usually a question
 for the jury on the facts and circumstances of each
 particular case, giving proper consideration to the
 character of the structure, its material, the time it has been
 in existence and use, the nature of the defect, its placing,
 etc.

 Fitzgerald v. City of Concord, 140 N.C. 110, 52 S.E. 309, 309-10 (1905) (holding the

 trial court erred in granting a nonsuit because it was for the jury to determine if there

 was constructive notice where the evidence showed that a culvert on a road with a 16

 to 18 inch hole in it had been in this condition for several weeks).

¶ 14 NCDOT contends it did not breach its duty under a theory of constructive

 notice because it exercised proper diligence and there was no evidence of how long

 the condition existed.3 We disagree. Here, there was more than a scintilla of evidence

 3 While issues related to actual notice and creation of the condition have been raised

 by the parties, we do not address these issues and express no opinion as to them because the
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 to support finding NCDOT breached its duty. There was circumstantial evidence,

 viewed in the light most favorable to the Plaintiffs, from which the jury could infer

 the ditch had been filled in for enough time that the condition would have been

 discovered had NCDOT exercised due diligence.

¶ 15 “In general, evidence of a defendant violating its own voluntary safety

 standards constitutes some evidence of negligence.” Thompson, 138 N.C. App. at 656,

 547 S.E.2d at 51. Here, according to NCDOT’s internal guidelines, maintenance was

 required when ditches became 50% filled in to ensure they could effectively collect

 and disperse surface water. Further, the purpose and policy of NCDOT, including in

 Franklin County, was to prioritize safety. As a result, these guidelines were

 effectively safety guidelines for the roads of North Carolina, and violation of these

 guidelines constituted some evidence of breach of duty. Plaintiffs presented more

 than a scintilla of evidence of a violation of these guidelines, and therefore some

 evidence of breach, as there were multiple witnesses who testified to seeing the ditch

 completely filled in shortly after the accident.

¶ 16 There was also circumstantial evidence, viewed in the light most favorable to

 Plaintiffs, from which the finder of fact could infer the dangerous condition existed

 for some time, satisfying constructive notice, including evidence showing it would

 trial court rightly denied NCDOT’s motions for directed verdict and judgment
 notwithstanding the verdict on the theory of constructive notice.
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 take “over a year” for “a ditch that has got 45 degree angles and two feet deep like the

 ditch [in question], . . . to fill up through natural erosion,” and the ditch was

 completely filled in requiring maintenance at the time of the accident. In the light

 most favorable to the Plaintiffs, this evidence shows the ditch took longer than a year

 to completely fill in, and it would have been at least halfway filled in for at least six

 months.4 Read together with NCDOT’s guidelines requiring it to note any ditch more

 than 50% filled in for maintenance, and viewed in the light most favorable to

 Plaintiffs, this evidence shows the ditch was in violation of NCDOT guidelines for at

 least six months. Since the inquiry into whether constructive notice has been

 established by the time period a deficient condition has existed is a fact sensitive

 inquiry for the jury, the six month frame here was sufficient to satisfy the Plaintiffs’

 burden on a motion for directed verdict and was properly submitted to the jury.

¶ 17 Additionally, the evidence, viewed in the light most favorable to the Plaintiffs,

 showed NCDOT had at least six months to discover the ditch filling-in beyond 50%,

 which was conspicuous at the time it was completely filled in,5 through its employees

 4 The jury could reasonably infer it would take at least six months for the ditch to

 become 50% filled in from the expert testimony that it would take over one year for the ditch
 to become 100% filled in. See Maxwell, 164 N.C. App. at 322, 595 S.E.2d at 761 (“When
 considering a motion for a directed verdict, a trial court must view the evidence in the light
 most favorable to the non-moving party, giving that party the benefit of every reasonable
 inference arising from the evidence.”).
 5 We note that although there is no testimony indicating the process of the ditch filling

 in would have been conspicuous, if the completely filled in ditch was conspicuous, viewing
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 or contractors mowing the area, its employees inspecting roads in the county, and its

 employees driving the county outside of work, all of whom had a duty or expectation

 to report such a problem according to their supervisor. The alleged failure to discover

 the deficiency in this ditch over the course of those six months constitutes more than

 a scintilla of evidence NCDOT did not exercise due diligence.

¶ 18 Altogether, as set out above, there was more than a scintilla of evidence

 NCDOT breached its duty by failing to maintain the completely filled ditch, which

 had been at least half filled, in violation of NCDOT guidelines, for at least six months,

 and, had NCDOT exercised due diligence, it would have discovered the “clearly

 visible” deficient ditch through its review of Highway 56 and the surrounding areas.

¶ 19 Furthermore, the cases on which NCDOT relies to assert otherwise are not

 controlling here. The cases cited focus on the length of time required to show

 constructive notice in cases regarding defective sidewalks, in which we found three

 and four years was not sufficient to establish constructive notice. See Desmond v.

 City of Charlotte, 142 N.C. App. 590, 544 S.E.2d 269 (2001) (relating to a 0.5 inch

 elevation difference between sidewalk concrete slabs for 1-2 years prior to the

 the evidence in the light most favorable to the Plaintiffs and giving them every reasonable
 inference, the process of the ditch going from 50% filled in to completely filled in was
 conspicuous. See Maxwell, 164 N.C. App. at 322, 595 S.E.2d at 761 (“When considering a
 motion for a directed verdict, a trial court must view the evidence in the light most favorable
 to the non-moving party, giving that party the benefit of every reasonable inference arising
 from the evidence.”).
 HICKS V. KMD INVESTMENT SOLUTIONS, LLC, ET AL.

 2021-NCCOA-39

 Opinion of the Court

 incident, and at the time the difference was 1.6 inches); Willis, 137 N.C. App. 762,

 529 S.E.2d 691 (2000) (relating to a 1.25 inch elevation difference between sidewalk

 concrete slabs). In the specific circumstance of these cases, the defect was minor and

 difficult to observe. However, here, there was evidence from multiple witnesses

 showing that the defect in the ditch was “clearly visible”; after “[taking] a look at [the

 road with the ditch]” the ditch “was at a point where it needed to be noted for

 maintenance”; and “[the filled in ditch] was something you could observe just by

 looking at it[.]” Thus, this case is distinct from Willis and Desmond.

 CONCLUSION

¶ 20 There was more than a scintilla of evidence to support the jury finding NCDOT

 had constructive notice of the deficient condition and breached its duty. Viewing the

 evidence in the light most favorable to the Plaintiffs, the filling in of the ditch beyond

 50%, in violation of NCDOT guidelines, would have been conspicuous for at least six

 months prior to Plaintiffs’ accident. NCDOT’s motions for directed verdict and

 judgment notwithstanding the verdict were properly denied.

 AFFIRMED.

 Judges ZACHARY and COLLINS concur.